# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

GARRY DONNELL JACKSON,

     Defendant-Appellant.

UNPUBLISHED
August 16, 2016

No. 326341
Oakland Circuit Court
LC No. 2013-248193-FH

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions on three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(k) which prohibits a county employee from engaging in sexual contact with a prisoner under the county's jurisdiction, regardless of whether the contact is consensual. We affirm.

Defendant's convictions arise from his unlawful sexual contact with a female inmate at the Oakland County jail on August 29, 2013, when he was an Oakland County sheriff's deputy.

In July 2013, the victim became a trustee at the jail, which meant that she helped the deputies assigned to her pod or unit. The victim's trustee position enabled her to have more contact with defendant, who occasionally worked in her pod. Other inmates characterized the relationship between defendant and the victim as overly friendly or flirtatious, and claimed that the victim received favorable treatment from defendant. The victim testified that in early August 2013, defendant asked her to take a bucket to the laundry room. While she was in the laundry room, defendant walked into the room and shut the door. He told her "that he wanted [her] so bad and he liked [her] so much and put his arm around" her and began kissing her. The victim testified that she was nervous, but was "okay" with defendant kissing her at that time and she kissed him back. However, she felt uncomfortable and pushed defendant away because she was nervous about getting in trouble. Defendant told her not to worry because he was "a cop." Defendant left the room and told the victim to wait a minute before returning to her cell.

On August 29, 2013, defendant was locking down the inmates, but unlocked the victim's cell and asked her to take some property bags up to the property closet. While the victim was inside the closet hanging up the bags, defendant walked into the closet and shut the door. According to the victim, defendant put his hands around her waist, told her that he liked her and not to be nervous, and reassured her that she was not going to get into any trouble. Defendant

-1-

then kissed her neck and her lips, put both of his hands down the inside of her pants, and placed his finger inside her vagina. The victim told defendant that she was nervous and not comfortable with this, but defendant reassured her that she would not get into any trouble. Defendant then opened his pants and asked the victim to "suck his penis." He put his hands on the back of her head and forced her head down. Defendant placed his penis inside her mouth. After a minute or two, the victim stopped and said she could not do it any longer because she thought she heard someone and feared they were going to get into trouble. Defendant told her not to say anything to anyone. Defendant left the closet first and instructed the victim to come out after a couple of minutes.

Four days later, another inmate reported the matter to another deputy after she noticed that the victim was quiet and not acting like herself. When someone with the sheriff's office came to speak to the victim, she broke down and told him what happened. Other inmates reported seeing both the victim and defendant enter the property closet at separate times and remain inside, with the door closed, for up to 15 minutes. Many testified that when the victim left the closet, her hair was different and her clothing looked disheveled.

Before trial, the trial court granted the prosecutor's motion to introduce other-acts evidence pursuant to MRE 404(b)(1). SH testified that when she was an inmate at the jail, defendant did things that were inappropriate. For example, defendant would look down into the first-floor showers and watch the female inmates shower, whereas most other deputies usually looked straight ahead.

KC testified that when she was an inmate at the jail before the victim arrived there, defendant looked at her differently than did other deputies. One night, defendant declined to take any "kites" from other inmates, but agreed to take one from KC and told her, "I would do anything for you you're sexiest f**k." According to KC, defendant looked at her as if he was "undressing" her "with his eyes."

LR was in the Oakland County Jail from May 2012 to July 2012. During that time, defendant talked to her, complimented her, and gave her special privileges; defendant was very flirtatious toward her and she flirted back. Defendant made comments about her body, like telling her she was "sexy," and would wink at her. LR was aware that defendant would look at her when she showered. After LR was released from jail, she and defendant exchanged telephone numbers, and defendant went to her house a few times. Although their physical contact was limited to only kissing, they sent sexually explicit photos of themselves to each other.

The victim died in August 2014, approximately one month before defendant's scheduled trial. The trial court granted the prosecutor's motion to admit the victim's preliminary examination testimony at trial. The defense theory at trial was that the victim, a drug addict, fabricated the allegations, possibly for financial motives. Defendant's first trial in September 2014 ended in a mistrial after the jury was unable to reach a verdict. Defendant was tried a second time in January 2015 and the jury convicted him as charged.

# I. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court erred in admitting the other-acts testimony of SH, KC, and LR under MRE 404(b)(1). We disagree.

The decision whether to admit evidence is within the trial court's discretion, and that decision will be reversed only if there is an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id.* at 722-723.

The trial court instructed the jury that the other-acts testimony could be considered only for certain limited purposes, which it described as follows:

> You may only think about whether this evidence tends to show: (a) that the defendant had a reason to commit the crime, (b) that the defendant specifically meant to commit the crime, (c) that the defendant acted purposefully, that is not by accident or mistake or because he misjudged the situation, (d) that the defendant used a plan, system or characteristic scheme that he has used before or since, and (e) and to demonstrate the defendant's sexual interest in females [sic, female inmates].

> You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person or he is likely to commit crimes.

MRE 404(b)(1) prohibits evidence of a defendant's other bad acts to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for a noncharacter purpose when that evidence is relevant to a material issue at trial and the probative value of the evidence is not substantially outweighed by its prejudicial effect. The logic behind the rule is that a jury must convict a defendant on the facts of the crime charged, not because the defendant is a bad person. *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if the evidence is (1) offered for a proper purpose, i.e., not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The trial court, upon request, may provide the jury with a limiting instruction for any evidence admitted under MRE 404(b)(1). *Id*. at 75. "At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

The prosecution has the initial burden of establishing the relevancy of the evidence to a permissible purpose under MRE 404(b)(1). *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id*., quoting *Crawford*, 458 Mich at 387. Under MRE 403, relevant evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation omitted).

We agree that the testimony of the other-acts witnesses was relevant for proper, noncharacter purposes. It was relevant to show a common plan or scheme by defendant to groom female inmates for sexual relationships (even though not all relationships became sexual), and to discredit the defense claim that the charges were fabricated and motivated by the victim's desire to financially benefit from the charges. The evidence of defendant's sexual interest in female inmates was also relevant to show defendant's intent to have sexual contact with the victim. Defendant had also stated in his interview that he disliked working with female inmates, and the other-acts testimony was relevant to impeach that claim.

SH's testimony, describing that defendant would look down into the women's showers, whereas other male deputies made it a point to look straight ahead when patrolling that area of the pod, allowed the jury to infer that defendant was sexually interested in female inmates. KC's testimony also showed that defendant was sexually interested in female inmates, and was further relevant to show that he had a plan or scheme to give favorable treatment to inmates who he was sexually interested in, and would sometimes express his sexual interest to those inmates. Evidence that a defendant has a sexual interest in a particular type of individual can be admissible to show motive, and not simply to show that the defendant is a sexually deviant person who is likely to have committed a charged offense. *People v Watson*, 245 Mich App 572, 579; 629 NW2d 411 (2001).

LR's relationship with defendant did not involve any physical sexual conduct, but they exchanged sexually explicit photographs and messages, thereby demonstrating a sexual attraction between them, which LR admitted. Although their relationship progressed once LR was released from jail, it began while LR was still an inmate, and LR testified that defendant gave her favorable treatment when she was an inmate. Therefore, LR's testimony was probative of defendant's plan or scheme to give favorable treatment to female inmates with whom he had a sexual interest. Accordingly, the trial court did not abuse its discretion in ruling that the other-acts testimony was relevant for proper, noncharacter purposes at trial.

The trial court also properly determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Numerous witnesses testified that defendant had developed an overly friendly, and even flirtatious, relationship with the victim, and treated her more favorably than he did other inmates. The other-acts evidence showing a similar pattern with other female inmates with whom defendant had also expressed or developed a sexual interest was highly probative of defendant's plan or scheme with regard to the victim, and probative of defendant's intent to act out sexually with the victim. The probative value of this evidence was high considering the defense theory that defendant had no interest in working with female inmates, and that the victim had fabricated the allegations, possibly because of a financial motive. Moreover, the trial court instructed the jury on the limited, permissible purposes for which the evidence could be considered, thereby reducing any potential for unfair prejudice. Accordingly, the trial court did not abuse its

-4-

discretion in ruling that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Defendant argues that the trial court's limiting instruction was erroneous because it allowed the jury to consider the evidence to demonstrate his "sexual interest in females," which defendant equates with a "lustful disposition" rationale disapproved in *Sabin*, 463 Mich at 60-61. We note that the trial court originally ruled that the evidence was admissible to show defendant's sexual interest in female *inmates*. Although the limiting term "inmates" was not included in the trial court's instruction, there was no objection to the instruction at trial. In fact, defense counsel expressed satisfaction with the instructions given. By expressing satisfaction with the court's jury instruction, defendant waived any error, leaving no error to review. See *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). Regardless, defendant was not prejudiced by the omission of the word "inmates," given that the only evidence offered at trial of defendant's sexual interest in females pertained to female inmates.

## II. PRIOR TESTIMONY

Defendant also argues that the trial court erred in admitting the victim's preliminary examination testimony at trial. Defendant argues that the prosecution failed to establish an adequate foundation to admit the prior testimony under MRE 804(b)(1), and that admission of the testimony violated his constitutional right of confrontation. We review the trial court's decision to admit the victim's former testimony under MRE 804(b)(1) for an abuse of discretion. See *Duncan*, 494 Mich at 722-723. Whether admission of the evidence violated defendant's constitutional right to confront the victim is an issue of constitutional law, which we review de novo. See *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

### A. MRE 804(b)(1)

The trial court admitted the victim's preliminary examination testimony at trial pursuant to the hearsay exception in MRE 804(b)(1), which allows the following statements by an unavailable declarant to be admitted at trial:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Defendant argues that the victim's preliminary examination testimony was not admissible under this rule because he did not have an opportunity and similar motive to develop the testimony at the preliminary examination. We disagree.

Preliminarily, we note that defendant conceded in his answer to the prosecutor's motion to admit the victim's preliminary examination testimony that he "certainly had the opportunity to cross-examine [the victim]." Defendant's argument below was limited to whether he had a similar motive to do so. In *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007), this Court stated that "[w]hether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony is presented at each proceeding."

The Court adopted a nonexclusive list of factors to be considered in determining whether a party had a similar motive to examine a witness at a prior proceeding:

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings—both what is at stake and the applicable burdens of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and the available but forgone opportunities). [*Id.* at 278.]

The record clearly establishes that defense counsel had the opportunity to cross-examine the victim at the preliminary examination, and did so at length. Counsel's motive in conducting that examination was similar to the motive at trial—to determine whether defendant committed a crime and to challenge the victim's credibility and motivation for bringing the charges. At trial, the defense attempted to show that there were various possible reasons for the victim to fabricate the allegations and to falsely accuse defendant of committing the sexual acts. It is apparent from counsel's questioning of the victim at the preliminary examination that he had a similar motive to explore these issues, and did so, in an attempt to cast doubt on the victim's credibility.

Although defendant argues that he did not have the opportunity to explore issues that arose after the preliminary examination, such as the victim's drug problem, calls she made from jail, and whether she had a financial motive to make the allegations, this argument does not undermine the purpose behind counsel's cross-examination at the preliminary examination. Counsel had the same motive to test the credibility of the victim's allegations at the preliminary examination as he did at trial. Moreover, the record discloses that defense counsel extensively questioned the victim at the preliminary examination about inconsistencies in her account, as well as whether she was trying to "set up" defendant, her monetary problems and whether she intended to sue the county, and about calls she had made from jail. Defense counsel also asked the victim if she had heard any rumors about defendant before becoming involved with him.

Defendant claims that his attorney specifically withheld questioning the victim about certain matters at the preliminary examination in order to surprise her with those questions before a jury at trial. If counsel decided to forgo questioning the victim on certain matters, that was a strategic decision. It does not diminish the existence of a similar motive to develop her testimony at the preliminary examination as he had at trial.

In addition, the different standards of proof at the two proceedings do not establish that defendant did not have a similar motive or opportunity to develop the victim's preliminary examination testimony as he did at trial. While the purpose of a preliminary examination is different from that of a trial, the victim's credibility and possible motives for fabricating her allegations were issues at both proceedings and defense counsel had a similar motive to discredit the victim's allegations at both proceedings.

Defendant's reliance on *People v Vera*, 153 Mich App 411; 395 NW2d 339 (1986), is misplaced because that case is factually distinguishable. In that case, this Court held that the trial court properly excluded former testimony that related to the amount of the defendant's bond, a matter unrelated to the issues at trial. *Id.* at 416. In contrast to *Vera*, this case does not involve

the admissibility of testimony related to some peripheral matter, but rather former testimony relating directly to defendant's commission of the charged offenses, which was the issue at trial. Defense counsel had a similar motive to develop the victim's testimony on that subject at both the preliminary examination and at trial. In both instances, counsel had a motive to discredit the victim's account of the events and to explore possible reasons why she would fabricate the allegations. Accordingly, the trial court did not abuse its discretion in ruling that the victim's former preliminary examination testimony was admissible under MRE 804(b)(1).

## B. THE CONFRONTATION CLAUSE

Defendant also argues that admission of the victim's preliminary examination testimony violated his rights under the Confrontation Clause. We again disagree.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI; see also Const 1963, art 1, § 20. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (citations omitted). The Confrontation Clause bars the use of a witness's testimonial statements if the witness is unavailable for trial unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Statements made during a preliminary examination are testimonial in nature and, therefore, implicate the Confrontation Clause. *Id*. at 68.

Although the victim's prior testimony is testimonial in nature, admission of her testimony does not violate the Confrontation Clause because defendant had a prior opportunity to cross-examine the victim at the preliminary examination. Defendant's claim that he was unable to cross-examine the victim regarding certain information obtained after the preliminary examination is not enough to show that his right of confrontation was violated by the admission of the victim's prior testimony. A defendant's right to cross-examination is not unlimited and "the Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks and citations omitted). The right of confrontation only guarantees "a reasonable opportunity to test the truth of a witness' testimony." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993).

Defendant's argument related to cross-examining other witnesses regarding their interactions with defendant is confusing. Defendant appears to argue that he should have been allowed to cross-examine the victim about her perceptions of the women's encounters with him but it would have been improper to ask the victim to comment on the credibility of other

witnesses. See *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Furthermore, defendant was able to confront and cross-examine the other women.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola