**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED FEBRUARY 4, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                            No. 123970

DANNY LEE KNOX, JR.,

Defendant-Appellant.

_____

**PER CURIAM**

The defendant was charged in the death of his four-month-old son, Xavier Knox, and convicted of first-degree felony murder, MCL 750.316(1)(b), with first-degree child abuse, MCL 750.136b(2), as the predicate. He was sentenced to life imprisonment without the possibility of parole. We must determine whether the admission of evidence regarding defendant's past anger directed at the child's mother, the child's prior injuries, and the mother's good character were plain errors affecting defendant's substantial rights. The Court of Appeals, in a divided decision, affirmed the

judgment of the trial court. We reverse the conviction of defendant and remand for a new trial.

I

On July 22, 1998, defendant was in the apartment of LaToya Kelley, the mother of his son. The couple argued during the evening, and Kelley later fed Xavier a bottle of formula and put him to bed. Defendant testified that Xavier seemed fine at that time. After Xavier went to sleep, Kelley left the apartment around 9:30 p.m. to visit a friend and neighbor. According to defendant, he checked on Xavier at around 9:45 p.m. and then sent Kelley's two-year-old child to the bathroom. When defendant returned to the bedroom, he noticed Xavier making gurgling noises and saw that his eyes had rolled back into his head. Xavier would not respond, so defendant ran to the balcony to call out for Kelley and then telephoned Kelley's mother to tell her that something was wrong with the baby. Defendant took his son to a neighbor, who in turn called 911. Emergency personnel arrived at the apartment around 10:15 p.m., at which point Xavier still had a heartbeat. By 10:25 p.m., the child's heartbeat had stopped.

Medical experts determined that the boy had died from being severely shaken and from his head coming into contact with an object several times. The boy suffered from retinal hemorrhaging, subdural and subarachnoid hematoma,

2

and three distinct skull fractures from three separate contacts with an unknown object. The experts opined that Xavier's injuries were not accidental, that the child most likely lost consciousness within one or two minutes of being injured, and that it would have been impossible for Xavier to consume formula after being injured. An expert also opined that Xavier's respiratory problems could have stabilized for an hour or more before his heart rate collapsed. There was also evidence that he had suffered prior abusive injuries, including recently sustained factures to the right arm and left leg, as well as healed rib fractures that were between three- and six-weeks-old.

Defendant's first trial resulted in a deadlocked jury. At his second trial, defendant denied killing or ever abusing his son and argued that it was Kelley who must have abused Xavier before leaving the apartment. Kelley testified that she and defendant had many arguments, with defendant becoming increasingly angry, shouting and kicking physical objects. On one occasion, he allegedly shoved her. Kelley also testified that she told defendant to get help for his anger and urged him to take anger-management classes. Defendant claimed that these were, in fact, parenting classes, but admitted that he took them at Kelley's urging. Kelley admitted that she, too, had a temper and that she had thrown items and torn a shower

3

curtain in anger. The prosecutor, however, also elicited testimony from her about how she had cared for her eleven brothers and sisters from the age of eight, and how she loved children in general and treasured her own two children. Kelley's parents and friends testified that she had a caring nature and loved her children.

Defendant did not object at trial to the testimony regarding his angry confrontations with Kelley, the prior injuries sustained by his son, or the testimony regarding Kelley's good character. After the jury convicted defendant, defendant appealed of right.[1] Defendant accused the prosecutor of misconduct in presenting the evidence regarding defendant's prior acts, Xavier's prior injuries, and Kelley's good character, and accused his trial counsel of ineffective assistance in failing to object. Defendant also questioned the propriety of his felony-murder conviction where the acts comprising the predicate felony also comprised the murder.

The Court of Appeals treated defendant's first issue as a purely evidentiary one and, in a divided decision,

---

[1] Defendant first sought a remand for an evidentiary hearing on the effectiveness of the assistance of his trial counsel on the basis of counsel's failure to challenge the prosecutor's submission of this evidence. The Court of Appeals denied defendant's motion because it was not persuaded that a remand was necessary at that time. Unpublished order, entered May 21, 2001 (Docket No. 226944).

4

affirmed defendant's conviction.[2]  In ruling that defendant was not entitled to relief, the majority relied heavily on this Court's decision in *People v Hine,* 467 Mich 242; 650 NW2d 659 (2002), and the majority's belief that this decision compelled a finding that there was no showing by the defendant of plain error affecting his substantial rights.  The majority found the evidence of defendant's angry behavior against Kelley sufficiently similar to the alleged abuse of the child to be either admissible or not harmful in admission.  It found the evidence of the past abuse of defendant's son probative of whether the injuries the boy suffered were inflicted intentionally.  It found the admission of the evidence of Kelley's good character improper under MRE 608 and 609, as well as MRE 404, but saw no showing of plain error affecting defendant's substantial rights because the prosecutor had a reasonable likelihood of convicting defendant by demonstrating that defendant was alone with the boy when the fatal injuries were sustained.

The dissenting judge disagreed with the majority's assessment of the effect of *Hine,* stating that *Hine* was consistent with precedent, and that application of that precedent required a reversal in this case.  The dissenting judge opined that the evidence of defendant's past anger

---

[2] **256 Mich App 175; 662 NW2d 482 (2003).**

5

and abuse served the improper purpose of demonstrating that defendant must have abused his son, resulting in the boy's death, because defendant had a bad character. The dissenter agreed that the evidence of past abuse of the child was admissible under MRE 404(b), but stated that the prosecutor put this evidence to improper use by indicating to the jury that the prior injuries were not just intentionally caused, but were caused by defendant. Finally, the dissenting judge opined that admission of the evidence regarding Kelley's good character prejudicially undermined defendant's credibility and defense. The dissenter argued that these plain errors were outcome-determinative and required the reversal of defendant's conviction and a remand for a new trial.

Although we agree with the Court of Appeals majority's assessment that this matter should be analyzed from the standpoint of whether admission of the contested evidence discussed above constituted plain error affecting defendant's substantial rights, we agree with the dissenting judge that plain error requiring reversal did, in fact, occur.

## II

In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission. Because defendant did not

object to the admission of the challenged evidence in this case, he must demonstrate plain error affecting his substantial rights, meaning that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence. *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999).

### III

MRE 404(b) provides in part:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v VanderVliet,* 444 Mich 52, 74-75; 508 NW2d 114 (1993), this Court articulated the factors that must be present for other acts evidence to be admissible. First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" *Id.* Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the

trial court, upon request, may provide a limiting instruction under MRE 105.

In *People v Crawford,* 458 Mich 376, 385; 582 NW2d 785 (1998), this Court explained that the prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Crawford, supra* at 387. Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded.

In *People v Sabin (After Remand),* 463 Mich 43; 614 NW2d 888 (2000), this Court specifically examined the exception in MRE 404(b) for evidence showing a "scheme, plan, or system." We clarified that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin, supra* at 63. We cautioned both that "[l]ogical relevance is not limited to circumstances in

8

which the charged and uncharged acts are part of a single continuing conception of plot," and that "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id.* at 64.

These decisions continue to form the foundation for a proper analysis of MRE 404(b). The case upon which the instant Court of Appeals majority placed so much emphasis, *Hine,* focused very specifically and narrowly on a particular application of the "scheme, plan, or system" principles discussed in *Sabin* to the facts presented. This Court concluded in *Hine* that the Court of Appeals had improperly imposed a standard of a high degree of similarity between the proffered other acts of the defendant and the charged acts. Specifically, this Court observed that the particular type of assaults on the defendant's former girlfriends were sufficiently similar to the method or system that could have caused the marks on the child victim to be admissible in that case. The trial court, therefore, did not abuse its discretion in determining that the assaults by the defendant on his former girlfriends and the charged offenses regarding the

9

child victim shared sufficient common features to permit the inference of a plan, scheme, or system.[3]

Contrary to the Court of Appeals majority's conclusion that *Hine* "presents a formidable obstacle to reversing on the basis of a trial court's error in admitting prior-bad-acts evidence" and has "reduced the value parties opposing prior-bad-acts evidence once derived from the first and third prongs of the *VanderVleit* test," 256 Mich App 188-189, *Hine* merely applied the rule that prior bad acts evidence that is probative of something other than the defendant's character or propensity to commit the charged crime is admissible. *Hine* neither announced new law nor did it signify a retreat from the *VanderVliet* principles; rather, it simply rejected an interpretation of *Sabin* that would have required an impermissibly high level of

---

[3] This Court commented in *Hine, supra*, on the odd circumstance that the Court of Appeals chose to recite the facts from defendant's point of view. We observed that it was not appropriate for an appellate court to discount the evidence presented to the trial court in support of the prosecution's theory. *Id*. at 251. As the dissenting judge in the instant case recognized, our concern in *Hine* was that the Court of Appeals had based its analysis on the erroneous conclusion that the evidence presented was insufficient to support the conviction. The Court of Appeals majority's apparent interpretation of this criticism found in *Hine* as the establishment of a new appellate standard of review for trial court rulings on relevancy under MRE 404(b) is not warranted. Rather, this Court in *Hine* simply stated the unremarkable principle that, when evaluating the sufficiency of the evidence supporting a conviction, the evidence must be considered in the light most favorable to the prosecution.

10

similarity between the proffered other acts evidence and the charged acts.

IV

With this understanding of the continued validity of this Court's MRE 404(b) jurisprudence, we now examine the propriety of the admitted prior acts, injury, and reputation evidence. We conclude that the admission of this evidence was erroneous and raises sufficient concern about the fairness of the trial and the integrity of the jury's verdict to require the reversal of defendant's conviction and a remand for a new trial.

The evidence of defendant's past demonstrations of anger were not relevant to any material fact at issue and did not meet the requirements set forth in *Sabin* for admissibility. Unlike the acts at issue in *Hine,* none of defendant's alleged manifestations of anger had any similarity to the acts that resulted in Xavier's death. The evidence showed that defendant had damaged walls and doors and, on one occasion, had shoved Kelley during an argument. Nothing about the evidence offered demonstrated any prior acts by defendant that were similar to the acts that were determined to have caused Xavier's injuries. Further, no evidence suggested that defendant was ever angry with his son or that he redirected his anger with Kelley to either Xavier or Kelley's other child. No one

11

testified to ever seeing defendant harm his son. The fact that defendant took classes (either for parenting or for anger management) showed that he was trying to deal with Kelley's perception that he had an anger problem, not that he had committed prior acts similar to those inflicted on Xavier.

Under these circumstances, the evidence of defendant's past anger could only serve the improper purpose of demonstrating that he had the bad character or propensity to harm his son. The prosecutor specifically argued that defendant's anger-management problem was a plausible explanation for what happened to Xavier. As the dissenting judge below correctly noted, the prosecutor did not use the evidence of defendant's anger for any other reason *except* to make an impermissible propensity argument. In this case, in which defendant's abuse of his son was implied from defendant having been the last adult to be alone with his son, the improper admission of the evidence was highly prejudicial. The trial court committed plain error when it admitted this evidence.

Turning to the evidence of Xavier's prior injuries, we agree with both the Court of Appeals majority and the dissent that the signs of past physical abuse of the child were relevant to prove that his subsequent fatal injuries were not inflicted accidentally. We concur, however, with

12

the dissent that the trial court committed error requiring reversal in permitting the prosecutor to use this evidence for an improper purpose. The prosecutor introduced the evidence of prior injury not only to show that the earlier events were abusive, but also to convince the jury that defendant had caused those prior injuries, despite the absence of any evidence that defendant had committed the past abuse.

As the Court of Appeals dissent correctly noted, "this was a close credibility contest with little hard evidence and the prosecutor improperly sought to establish [defendant's] bad character rather than risk an acquittal as a result of the slim evidence of his guilt." 256 Mich App 208. The trial court committed plain error in failing to prevent the prosecutor from improperly using the evidence of prior abuse.

Finally, we agree with both the Court of Appeals majority and dissent that it was plain error to permit the introduction of the evidence regarding Kelley's good character. We agree with the dissent that this evidence improperly undermined defendant's credibility.

The prosecution presented this evidence as part of its case-in-chief. Eight witnesses testified positively about Kelley's background and parenting skills. This evidence was logically irrelevant to the prosecution's case-in-

13

chief, was improper character evidence under MRE 404(a), and did not serve one of the noncharacter purposes listed in MRE 404(b). Character evidence related to witnesses is governed under MRE 404(a)(4) by MRE 607, 608, and 609. MRE 608(a) limits opinion and reputation evidence to character for truthfulness or untruthfulness after the character of the witness has been attacked. MRE 608(b) then allows the trial court to admit evidence of specific witness conduct to support the witness's credibility. In this case, the evidence of Kelley's character had nothing to do with her truthfulness or untruthfulness. The evidence was improperly introduced to demonstrate that Kelley acted in conformity with her alleged good character, in contrast to defendant acting in conformity with his alleged bad character.

The improper admission of the evidence of Kelley's good character, like the admission of the evidence of defendant's anger problems and the improper use of the evidence regarding Xavier's prior injuries, created far too great a risk of affecting the outcome of the case, given the absence of any direct evidence that defendant committed the acts that resulted in Xavier's death. Consequently, we

14

reverse the judgment of the Court of Appeals and remand this case to the circuit court for a new trial.[4]

Maura D. Corrigan
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

---

[4] In light of this reversal, we need not address defendant's second argument, questioning the sufficiency of the evidence for a felony-murder conviction.