# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

AARON MATTHEWS,

      Defendant-Appellant.

UNPUBLISHED
May 11, 2017

No. 330933
Wayne Circuit Court
LC No. 15-002942-02-FH

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, carjacking, MCL 750.529a, assault with intent to commit murder (AWIM), MCL 750.83, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 50 to 100 years' imprisonment for his second-degree murder conviction, 20 to 40 years' imprisonment for his carjacking conviction, 50 to 100 years' imprisonment for his AWIM conviction, 40 to 60 months' imprisonment for his felon-in-possession conviction, and two years' imprisonment for his felony-firearm conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

This appeal arises from defendant's involvement in the death of Edward Childress III and several other crimes, which occurred near Chalmers Street and Longview Street in Detroit on March 1, 2015. At approximately 2:00 a.m. that day, several members of the "Knights of the Roundtable Club" arrived at the Chalmers Community Center (CCC). Vera Williams, a member of the club, explained that she and other members had gone to CCC because they were celebrating the anniversary of "Harpos," which is a local concert theatre. According to Williams, there were approximately 150 to 175 people, consisting of members and nonmembers, celebrating at CCC.

Williams and her boyfriend, Dorian Simpson, were working the bar. At some point, Williams noticed an unidentified man who "kept pulling his hood over his head and taking his hood off" repeatedly. Williams also walked over to the men at some point and apologized to them for suspecting that they were up to no good. Williams and Simpson returned to the bar and continued serving drinks. At some point thereafter, Williams noticed defendant "just staring at

-1-

[her] like griming [her]."[1]  Williams asked defendant why he was staring at her, but he remained silent.  At that point, Simpson jumped over the bar and went up to defendant and his friends again.  Another member, Michelle Smith, was walking with Childress toward the bar when they noticed defendant had a gun.  Defendant aimed the gun toward the ceiling and shot one round into the air.  At that point, Childress ran toward defendant and grabbed him around the waist in an attempt to disarm defendant.  According to Smith, she saw defendant place the gun to Childress's head and pull the trigger.  Smith testified that after defendant shot Childress in the head, he fired "two or three more shots" before running out of the front door.  As defendant ran out of the front door, another unidentified man, who was presumably codefendant Marcus Perkins, began firing rounds toward the crowd.  The second shooter fired approximately three to five gunshots before also running out of the building.

Once defendant was outside of the building, he approached Eugene Goldsby with his gun drawn.[2]  Defendant demanded that Goldsby "run [his] pockets," which means to "take your stuff out of your pockets and give it to me."  According to Deshaun Johnson, a witness to the robbery, defendant demanded that Goldsby "give him everything out of his mother fucking pocket [sic] this isn't no mother fucking game."  When Goldsby pulled only keys out of his pocket, defendant hit him in the head with his gun before taking off.

At some point, Detroit Police Officer Christopher Smith responded to the scene.  When he arrived, Smith observed several people exiting the building, screaming, "he's in there."  Smith walked inside the building and found Childress lying in a pool of blood on the ground near the bar area.  Childress was bleeding from his abdomen and head, and would later die from his injuries.  Smith also discovered that two other individuals, Kaysha Pitts and Andre Carter, suffered gunshot wounds.

At approximately 4:15 a.m., defendant approached Chanita Yancy who was sitting in her vehicle in the parking lot of the Fountain of Truth Church, which is not far from CCC. Defendant knocked on Yancy's window and asked if she would give him a ride.  After Yancy declined, defendant stepped back from the car and said, "give me your MFing car and I know yaw know what that means."  According to Yancy, Defendant pulled a .22 caliber handgun out of his pocket and shot at the driver's side of the vehicle several times.  Yancy was able to pull away in her car, but she suffered a gunshot wound to the left side of her body.

Prior to defendant's trial, the prosecution put defendant on notice of its intent to introduce other-acts evidence under MRE 404(b).  Specifically, the prosecution sought to introduce evidence of defendant's involvement in an armed robbery that occurred on Grayton Street on February 28, 2015, and a homicide that occurred on Maiden Street at approximately 12:30 a.m. on March 1, 2015.  The prosecution argued that this evidence would help establish defendant's

---

[1] Williams explained that "griming" means to intimidate someone.

[2] At trial it was revealed that Goldsby could not identify defendant as the perpetrator, rather it was Deshaun Johnson, who observed the attempted robbery and was able to identify defendant as the perpetrator.

identity in the crimes that occurred at CCC, and demonstrate that he engaged in a common scheme or plan in carrying out his crimes.

Defense counsel opposed the motion, arguing that the other-acts evidence was irrelevant because the circumstances surrounding the crimes were too dissimilar to the crimes committed in this case. Additionally, defense counsel argued that even if the other-acts evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. After hearing the parties' arguments, the trial court ruled that the other-acts evidence was admissible because it was offered for a legitimate purpose under MRE 404(b) and was more probative than prejudicial. The trial court also noted that it would give a limiting instruction to alleviate any potential prejudice.

At trial, with respect to the Grayton Street robbery, Chantel Baker testified that, at approximately 4:00 p.m. on February 28, 2015, she and her boyfriend, Ivan, were driving down an unidentified street when they approached a SUV stopped in the middle of the street. Ivan honked the horn at the driver of the other vehicle and an unidentified passenger stuck his hand out of the vehicle and waved them around. Ivan continued driving to his brother's house, which is located on Grayton Street. After they arrived, Baker and Ivan were standing in the driveway when the passenger of the SUV jumped out of the vehicle and started shooting his gun. At some point the driver, who was later identified as defendant, exited the vehicle. The passenger ran up to Ivan and took his Cartier glasses, wallet, and coat while defendant took his jewelry.

With respect to the Maiden Street homicide, Tekiyus Williams testified that he was at a cousin's house on Maiden Street when he heard a knock on the door around midnight on March 1, 2015. Williams saw one of his cousin's, Andre Richburg, answer the door. At that point, defendant "and another dude" tried to push their way into the home while defendant demanded Andre "run [his] shit." Andre responded by successfully pushing the men back and shutting the door. Immediately thereafter, defendant shot at least five times at the door, killing Andre.

Defendant was convicted and sentenced as indicated above. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred when it allowed the prosecution to introduce evidence at trial of his involvement in unrelated crimes. Specifically, defendant argues that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice.

We review a preserved challenge to a trial court's evidentiary ruling for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). That is, a "trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 723. Additionally, we review a trial court's decision involving a preliminary question of law such as whether a rule of evidence precludes admission of evidence de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). Because the rules of evidence are reviewed de novo, if a trial court errs in admitting evidence as a matter of law, it is an abuse of discretion. *Bynum*, 496 Mich at 623.

-3-

Generally, evidence of other crimes, wrongs, or acts is inadmissible to prove a defendant's propensity to act in conformity with such evidence. MRE 404(a). However, evidence of other crimes, wrongs, or acts may be admissible if offered for other purposes such as "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b); see also *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). In order to introduce other-acts evidence at trial, a prosecutor must establish: (1) the evidence is being offered for a nonpropensity purpose under MRE 404(b), (2) the evidence is relevant under MRE 401 and MRE 402, and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. See *id*.

Defendant's central argument on appeal is that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 provides, in relevant part, that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Unfair prejudice "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citation and quotation marks omitted). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Mardlin*, 487 Mich at 627.

In this case, the trial court admitted other-acts evidence which, as previously indicated, consisted of: (1) the testimony of Chantel Baker, and (2) the testimony of Tekiyus Williams. This evidence was highly probative of whether defendant committed the charged offenses, particularly with respect to the assault with intent to do great bodily harm (AWGH) and armed robbery of Eugene Goldsby because Goldsby was unable to identify his perpetrator. Likewise, the evidence was highly probative because it showed that defendant employed similar language such as "run your s***" or "run [your] pockets" when carrying out a robbery, and that he brandished a gun almost immediately when his victims failed to comply. Furthermore, the other-acts evidence did not inject extraneous considerations to the merits of the case; rather, it provided the jury an opportunity to make an inference to determine whether defendant was involved in the crimes committed after the death of Edward Childress III.

Even if minimal prejudice did exist, the trial court told the jury that it could only consider the evidence for the limited purpose of determining whether defendant used a common scheme or plan and whether defendant was the perpetrator of the charged offenses. The trial court further instructed the jurors not to use the other-acts evidence to conclude defendant is a bad person or that he is prone to commit crimes. Any danger of unfair prejudice may be alleviated by a limiting instruction because jurors are presumed to follow their instructions. *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014) (citation omitted). In this case, it is clear that the jurors followed their instructions as they found defendant not guilty of the AWGH and armed robbery of Goldsby. These charged offenses were the most susceptible to the potential of undue weight by the jury based on Goldsby's inability to identify defendant as his perpetrator. Thus, any unfair prejudice that may have been present was alleviated by the trial court's limiting instruction to the jury. See *Roscoe*, 303 Mich App at 646.

Review of the record leads us to conclude that the complained of other-acts evidence was admitted to prove defendant's identity and that he engaged in a common scheme or plan. Proof of identity and common scheme or plan constitutes a proper purpose under MRE 404(b). The other-acts evidence was relevant under MRE 402 to prove identity and common plan or scheme. As indicated in the analysis above, the probative value of the other-acts evidence was not substantially outweighed by unfair prejudice under MRE 403. We therefore find that because the other-acts evidence met all preconditions for admissibility, the trial court did not abuse its discretion in ruling the other-acts evidence admissible. *People v McMillian*, 213 Mich App 134, 137-138; 539 NW2d 553 (1995). Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello