# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

         Plaintiff-Appellee,

v

MICHAEL GARY COHEN,

         Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No.  336183
Grand Traverse Circuit Court
LC No.  2016-012495-FH

Before:  O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant, a manager at a Dairy Queen (DQ) store in the Grand Traverse Mall in Traverse City, was charged with five counts of CSC-IV for engaging in sexual contact with two female employees at the store.  He was charged in Count 1 with using force or coercion to engage in sexual contact with employee AP's buttocks, contrary to MCL 750.520e(1)(b).  He was charged in Counts 2 through 5 with engaging in sexual contact with a person at least 13 years of age but less than 16 years of age by an actor five or more years older than the complainant, contrary to MCL 750.520e(1)(a), for separate incidents involving employee KF.  Count 2 alleged that defendant touched KF's breast, Count 3 alleged that defendant touched KF's buttocks, and Counts 4 and 5 alleged that defendant inappropriately touched KF by pressing up against her body, including her buttocks.  The jury convicted defendant of Counts 4 and 5 involving KF, but acquitted him of the remaining counts.  The trial court sentenced defendant to 2-1/2 years' probation, with eight months to be served in jail.  Defendant appeals as of right.  We reverse and remand for a new trial.

The charges arose after KF's mother confiscated KF's cell phone as punishment and read KF's text messages.  After discussing the text messages with KF and AP, who was the daughter of KF's mother's then-boyfriend, KF's mother contacted the police.

Testimony at trial indicated that AP worked at the DQ managed by defendant when she was 16 years old.  According to AP, when she was in the back area of the DQ doing dishes in a small corner surrounded by three large sinks with crates above them, defendant "kind of just rubbed against [her] butt."  Defendant told her "it was an accident," but then he did it again and said "it wasn't an accident that time."

When AP stopped working at the DQ, she recommended to defendant that he hire KF, who thereafter worked at the DQ when she was 15 and 16 years old.  KF testified that on one

occasion when she was working the front counter, defendant touched her breast while leaning over her to get a blender. He then asked her if she felt the touch. On another occasion, KF and a male co-worker were walking through the corridor of the DQ, with defendant walking behind them, when defendant swung a trash bag and hit KF's buttocks with the bag. Defendant then swung the bag and hit KF a second time. When KF turned around and looked at defendant, he said, "Oh, so you feel it the second time," and then laughed. KF also testified that there were two occasions when she was in the back room doing dishes and defendant, whom she described as "big," "leaned his body against hers" while reaching for something that was on a rack above the sink. Defendant's body made contact with her "butt through mid-back." Defendant did not "linger" or stay pressed against her, and KF did not know what part of defendant's body was touching her body.

Both AP and KF testified about the limited work space at the DQ. AP testified that the DQ was "close quarters" and that on occasion other employees would brush against her arm. She described a "little hall" that was two to three feet wide that led from the front of the DQ to the back. KF testified that the back area of the DQ was small, tight and "very cramped," that it contained a freezer, cooler, sinks, and crates, and that it had "no wiggle room." Both AP and KF also testified about the work environment at the DQ. AP testified that defendant frequently made "off color jokes with customers and employees" and that "that's just who he was." KF testified that defendant made sexual comments to her, and about other females, that made her uncomfortable.

When the police interviewed defendant, he did not recall touching AP's buttocks. He also did not recall touching KF's breast or buttocks, but agreed that incidental contact at work did occur and claimed that if he did touch her, it was accidental or incidental. Defendant vaguely remembered the incident when he swung the trash bag and hit KF's buttocks, but said he only did so as a joke. Defendant stated that a lot of flirting went on at the DQ, but said he was "pretty professional."

Before trial, the prosecutor filed a motion to introduce evidence of defendant's conduct involving other employees under MRE 404(b)(1). The prosecutor stated that the evidence was being offered to show that defendant's touchings of AP and KF were not accidental, but rather were part of an intentional scheme, plan, or system to sexually touch female employees. The prosecutor informed the court that the evidence would show that defendant made several inappropriate sexual advances toward other employees and that he engaged in "grooming" behavior that led up to the touchings in this case. The trial court granted the motion and allowed the prosecutor to admit evidence involving employees FH, SM, and AP's sister. At trial, the prosecution also elicited other-acts evidence from employee LR, who was not included in the prosecutor's pretrial notice.[1]

The jury convicted defendant of two counts of CSC-IV for the two incidents when he leaned his body against KF while she was doing dishes and made contact with her "butt through mid-back." Defendant was acquitted of the remaining counts.

---

[1] Defendant does not present any argument on appeal with respect to the lack of pretrial notice.

On appeal, defendant argues that the trial court erred in admitting under MRE 404(b)(1) evidence of his conduct involving other employees. After review of this evidentiary decision for an abuse of discretion, we agree. See *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b)(1), other-acts evidence must be relevant to an issue other than propensity, must be relevant to an issue or fact of consequence at trial, and its probative value must not be substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The burden is on the prosecutor to establish the relevance of other acts. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

Sexual contact is an essential element of CSC-IV. MCL 750.520a(q) defines "sexual contact" as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for [other enumerated purposes]." The other-acts evidence was offered for its relevance to show that defendant acted intentionally by touching the victims for a sexual purpose. MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In its pretrial motion, the prosecutor argued that the other-acts evidence would show that defendant had a pattern of making inappropriate verbal comments and sexual advances against employees and other individuals, and that such evidence would show that the charged acts were not accidental, but rather were done intentionally for a sexual purpose. The absence of mistake or accident was a material issue given the defense theory that any touching was accidental and merely incidental to the work space. The trial court admitted the other-acts testimony after the prosecutor indicated that the testimony would establish that defendant "made several inappropriate sexual advances towards the employees," and made inappropriate sexual comments about young females. The witnesses, however, did not offer testimony at trial as represented in the prosecutor's pretrial motion.

FH's testimony indicated that she was 16 years old and defendant was in his mid-20s when he repeatedly asked her to go to the movies or out to dinner. She also stated that defendant would not let her boyfriend see her while she was working. FH denied that defendant ever

touched her or tried to touch her. AP's testimony indicated that defendant asked if her 14-year-old sister had taken $20 that was missing from the cash register because her bra looked like it had gotten bigger during the day. Defendant also said that AP's sister was pretty and that he wanted her to be his wife. SM testified that she was 17 years old when defendant gave KF a note to give to SM, in which defendant asked SM whether she would go on a date with him. LR's testimony indicated that she worked at the DQ store for one day and that defendant asked her if she had a boyfriend. While she was doing dishes, defendant told her that she had a hair or fuzz on her buttocks and then remarked, "Not that I was looking or anything."

Neither FH nor SM testified that defendant "made several inappropriate sexual advances towards the employees." AP did not testify that defendant said her sister was "the perfect height for a blow-job." Rather, KF testified that she believed defendant insinuated that she [KF] was the perfect height for a "blow job" if she were to get on her knees. Nor did AP testify that defendant made inappropriate comments about her sister's buttocks. In sum, the witnesses did not offer the testimony as represented by the prosecutor, which led the court to conclude that the other-acts evidence was admissible to show a pattern of inappropriate sexual advances toward employees and corroborate the victim's allegations. There was no pattern or scheme described by the witnesses that had any significant probative value to the material issue whether defendant intentionally touched the victims for a sexual purpose. The other-acts testimony as presented to the jury was far removed from the allegations of sexual contact at issue in the case. The evidence gave rise to a significant danger that the jury would make an improper character-to-conduct inference—that is, that it would cause the jury to conclude that even if defendant was not guilty of the present offenses, he was a person of poor character. The danger of unfair prejudice from the testimony substantially outweighed whatever probative value the evidence might have had. See MRE 403. Consequently, the trial court abused its discretion in admitting the testimony.

Errors in the admission of evidence will not warrant relief if they were harmless. *People v Crawford*, 458 Mich 376, 399; 582 NW2d 785 (1998). In order to establish a right to relief, a defendant must demonstrate that it is more probable than not that the error affected the outcome of the lower court proceeding. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999), citing MCL 769.26. In *Denson*, 500 Mich 410, our Supreme Court stated:

> [O]ther-acts evidence carries with it a high risk of confusion and misuse. When a defendant's subjective character [is used] as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative value of the evidence. The risk is severe that the jury will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again. [Quotation marks and citations omitted.]

Given these dangers, the Court in *Denson* instructed that harmless error analysis should be applied with care and that "the mere presence of some corroborating evidence [of guilt] does not automatically render an error harmless." *Id*. at 413. Rather, the Court explained that the effect of the error must be assessed "in light of the weight and strength of the untainted evidence." *Id*. (quotation marks and citation omitted).

Defendant's theory that the touchings were not done for a sexual purpose, but rather were accidental and incidental to the space constrictions of the DQ, was not wholly inconsistent with the victims' versions of events. Although defendant's comments to KF, after he touched her breast and after the second touching of her buttocks, suggested that these touchings were intentional, the jury acquitted defendant of both of those counts. The prosecutor also misused the evidence when she argued during closing arguments that "the testimony of nearly every other witness supported what they [the victims] said, that "You heard from FH that this has been going on since 2008," and that "the testimony of literally every other witness supported the statements made by the victims." The testimony of the other witnesses, however, referred to conduct that was unrelated to the alleged touchings. After considering the entire record, we conclude that the improper admission of the other-acts evidence undermines the reliability of the jury's verdict and that it is more probable than not that, had this evidence not been admitted, the result of the proceeding would have been different. See *Lukity*, 460 Mich at 495-496. Accordingly, the error was not harmless. We therefore reverse defendant's convictions and remand for a new trial. Given this conclusion, it is not necessary to address defendant's other allegations of error.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens