*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

GREGORY DEAN TUCKER,

   Defendant-Appellant.

UNPUBLISHED
January 22, 2019

No. 340425
Oakland Circuit Court
LC No. 2017-262167-FH

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of receiving and concealing stolen property ($1,000 or more, but less than $20,000), MCL 750.535(3)(a). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 6 to 66 years' imprisonment, to be served consecutively to parole. We affirm.

## I. ADMISSION OF EVIDENCE AND PROSECUTORIAL ERROR

Defendant argues that the trial court erred by ruling that the evidence of defendant's past use of 14 aliases was admissible. Defendant contends that his past use of aliases was improper character evidence and, even if relevant, the evidence should have been excluded under MRE 403 because it was unfairly prejudicial. Alternatively, defendant contends that the prosecutor deprived him of his due process right to a fair trial when he engaged in misconduct by eliciting the testimony regarding the aliases.

"The rule that issues for appeal must be preserved in the record by notation of objection is a sound one. Counsel may not harbor error as an appellate parachute. Deviation from a legal rule is 'error' unless the rule has been waived." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) (quotation marks and citations omitted). "A defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Id*. (quotation marks omitted). According to our Supreme Court:

   Waiver has been defined as "the 'intentional relinquishment or abandonment of a known right.'" It differs from forfeiture, which has been

explained as "the failure to make the timely assertion of a right." "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." Mere forfeiture, on the other hand, does not extinguish an "error." [*Id*. at 215 (citations omitted).]

During the recess, standby counsel expressed satisfaction with Detective Matthew Goebel's answer to the prosecutor's question and the trial court agreed. Therefore, looking solely to stand by counsel's actions, defendant waived this issue on appeal. Defendant, however, was acting *in propria persona*, and he did not affirmatively approve the question nor did he ever object to it. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Therefore, this issue is, at a minimum, not preserved. So too is his prosecutorial error argument, as no contemporaneous objection was lodged in that regard. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

Generally, a trial court's ruling admitting evidence is reviewed for an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). However, "[b]ecause defendant did not object to the admission of the challenged evidence in this case, he must demonstrate plain error affecting his substantial rights . . . ." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

Additionally, as recognized by this Court:

Issues of prosecutorial [error] are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. Further, allegations of prosecutorial [error] are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context.

Unpreserved issues are reviewed for plain error affecting substantial rights. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." [*Bennett*, 290 Mich App at 475-476 (citations omitted; third alteration in original).][1]

---

[1] Although this type of argument is generally referred to as "prosecutorial misconduct," this Court has stated that "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' "

The trial court did not err in admitting testimony regarding defendant's past use of 14 aliases. The trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401 (emphasis added). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

We think it clear that the trial court did not abuse its discretion in admitting the evidence. Although defendant did not mention MRE 404(b), he implied that the testimony was improper under MRE 404(b)(1), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character . . . ." *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). Defendant's past use of aliases was relevant to explaining the process that Detective Goebel used in his investigation to identify defendant as the person who pawned the speakers. Detective Goebel's testimony about defendant's past use of aliases, as well as his testimony about the process used to identify defendant as the one who left the fingerprint at the pawnshop, makes the fact that defendant was "Robert Metts" more likely to be true. Detective Goebel's testimony helped prove that "Robert Metts" was not defendant's real name as he asserted. Therefore, the evidence was relevant to a proper purpose – identity. MRE 404(b)(1). Identification evidence is always relevant. MRE 404(b)(1).

The testimony was also properly admitted in response to defendant's cross-examination of Detective Goebel where defendant questioned whether Detective Goebel knew if defendant used different names with his family and friends. Specifically, it tended to refute the defense's

---

*People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Nevertheless, regardless of "what operative phrase is used, we must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id.* at 88. Here, we will refer to defendant's argument as prosecutorial error, as the argument is limited to technical errors by the prosecutor.

contention that Detective Goebel did not know if defendant used different names with his family and friends, and not just law enforcement.

Nor was the evidence of defendant's past use of aliases unfairly prejudicial. According to defendant, the unfair prejudice was illustrated during the prosecutor's closing argument:

> Well, here's a question, what about the other thirteen known aliases to law enforcement other than Tucker and Metts? Because in America, like the Defendant said, we have a court system. We have jury trials like Judge Warren went through this morning. And we base our decisions on evidence and only evidence admitted in court through an adversarial process.
>
> Now, the Defendant's -- he can talk about whatever he wants in his opening statement, his closing argument. It doesn't matter. What matters is evidence presented and admitted for you to consider. Because the evidence we have is that the Defendant is a man with fourteen known aliases to law enforcement, fourteen known to law enforcement. He used a different name, the fake address, the fake ID, the fake driver's license number with a -- with a bad name that wasn't his.

However, "[d]uring closing argument, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case." *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014). The prosecutor's theory was that defendant's use of a false name showed guilty knowledge. The challenged testimony was admissible under MRE 401 because, as the prosecution argues, "knowledge that the property was stolen was an essential element of the crime." "An essential element of the crime of receiving and concealing stolen property is knowledge that the property was previously stolen." *People v Watts*, 133 Mich App 80, 82; 348 NW2d 39 (1984). "Guilty knowledge may be inferred from all the facts and circumstances brought out at trial[.]" *People v Laslo*, 78 Mich App 257, 262-263; 259 NW2d 448 (1977) ("The jury could reasonably infer from defendant's recognition of the need to obscure the chain of title to the goods that he knew the goods were stolen, and that he suggested the false name to aid in concealment of the goods from discovery and recovery by their rightful owner, knowing the same to have been stolen."). Defendant's use of a false name when he pawned the speakers tended to show guilty knowledge. Its admission was not more prejudicial than probative.[2]

---

[2] Although defendant argues that the evidence of his past use of aliases was prejudicial, he did not object to this testimony, nor to the prosecutor's question that elicited the testimony. Instead, defendant further questioned Detective Goebel about defendant's past use of aliases. Instead of defendant questioning Detective Goebel on defendant's past use of aliases, " 'a curative instruction could have alleviated any prejudicial effect.' " *Bennett*, 290 Mich App at 476, quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

Defendant also argues that the prosecutor erred by eliciting the testimony regarding the aliases. Since the trial court properly permitted the question and testimony regarding defendant's use of 14 aliases in past contacts with law enforcement, the prosecutor did not err by eliciting that testimony. Also, reversal is not warranted because any error did not result in the conviction of an actually innocent person or seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Bennett*, 290 Mich App at 475-476. There are several reasons for this conclusion. First, the thumbprint taken at the pawnshop belonged to defendant. Second, defendant used a false name, "Robert Metts," when he pawned the speakers showing guilty knowledge. Third, defendant initially brought his name into contention when he introduced himself as "Gregory Tucker Robert Metts" during the trial and argued in his opening statement that "Robert Metts" was his real name. Defendant has not shown any plain error in the prosecutor's question.

## II. SENTENCING GUIDELINES DEPARTURE

Defendant's minimum sentencing guidelines range was calculated at one to four years. However, the trial court sentenced defendant to a minimum of six years' imprisonment, representing a two-year upward departure from the guidelines' recommended sentence range. Defendant now argues that the departure sentence imposed was not proportional to the crime because he was 59 years old and had "reconsidered the path of his life" during his nine months in prison.

We review a trial court's departure from a defendant's applicable sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review the reasonableness of an imposed sentence by reviewing whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

The "principle of proportionality requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id.* at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Therefore, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. Still, "the guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts 'must consult' and 'take . . . into account when sentencing[.]' " *Steanhouse*, 500 Mich at 474-475 (quotation marks and citations omitted).

The trial court did not abuse its discretion in applying the principle of proportionality and provided adequate reasons for the departure sentence imposed. The trial court's reasoning was as follows:

> The advisory guidelines in this case is [sic] twelve to forty-eight. He's fifty-nine years of age. He has several pending charges. He was on parole at the time of the offense. He has seven prior felonies, seventeen misdemeanors, unemployed with a GED, a history of substance abuse at least with cocaine.

* * *

He's been to prison five times, jail eleven times, five probation terms. His history begins in 1983 with a CCW, immediately sentenced to prison. And basically from that point on is an armed robbery conviction, a delivery and manufacture of controlled substances, fleeing and eluding a police officer, disturbing the peace, entering without permission, breaking and entering a building with intent, for which he is still pending parole on, retail fraud, stolen property, receiving and concealing, retail fraud second, obstructing by disguise. There's a -- there was a gap that I could discern maybe three or so years from 1983 until the current day, consecutive years in which he was not under some kind of criminal justice supervision. But that's -- that's really, as far as I can tell, pretty much it.

And as the People pointed out, his PRVs are at a hundred and thirty, and the maximum is seventy-five. He absconded from probation -- excuse me, parole. He tested positive while on parole. He was an absconder for a significant period of time till he was arrested on this offense.

* * *

We've had a few decades now of this Defendant's conduct. I believe in redemption. I believe absolutely that he can turn his life around and move forward in -- in a way that is -- he could become a contributing member of society. On the other hand, he has a voluminous, broad, and wide-scoping range of criminal conduct in the past, inability to comply with supervision, and he stands before me with a habitual fourth offense, very material violation of the law that he needs to serve time for.

I find it is in the best interest of justice to sentence the Defendant as follows:

To six to sixty-six years in the Michigan Department of Corrections . . . .

I find that is appropriate because it is a fifty percent increase in the top of the guideline range. I think that it is proportional in light of the PRVs being maxed out as mentioned before. That he was on parole, an absconder. That he has a long history of violations of parole -- violations of probation and parole. This is similar conduct to conduct that he was on parole and other convictions in the past. As I mentioned, he's almost had continuous supervision under the criminal justice system. And I think all those factors show that this is a reasonable sentence, and those items are not accounted for in the guidelines, and therefore, proportional as well.

The sentence imposed was " 'proportionate to the seriousness of the circumstances surrounding the offense' " and defendant. *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. As the trial court highlighted, defendant "has a voluminous, broad, and wide-scoping range of criminal conduct in the past, inability to comply with supervision, and [] a

habitual fourth offense, very material violation of the law that he needs to serve time for." Therefore, the minimum sentence of six years' imprisonment " 'is proportionate to the seriousness of the matter.' " *Steanhouse*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro