*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY LAMAR BONNER,

Defendant-Appellant.

UNPUBLISHED
June 24, 2025
9:28 AM

No. 359850
Ingham Circuit Court
LC No. 17-000577-FC

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

YOUNG, J (*dissenting*).

Because I would instead remand this matter for a new trial, I dissent.

To begin, I call into question whether Cottrell should have been qualified as an expert in the first instance. As the majority mentioned, there was a pre-trial motion to exclude testimony from Cottrell as an expert for the people. I agree with the majority that at that hearing and again on appeal, defense counsel persuasively highlights the myriad cases in which Cottrell's testimony has been deemed erroneous or improper. The majority highlights some of those cases. *Ante* at 10 n 3. Where we part ways is in our viewing of the trial court's application of MRE 702. There, I think the trial court fell short.

MRE 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

-1-

(d) the expert's opinion reflects a reliable application of the principles and methods

to the facts of the case.

It is difficult to identify where, if at all, a track record of providing improper testimony would be considered under these factors. It is likewise difficult to identify where, if at all, the number of times one was previously qualified as an expert would be considered under these factors.

But defense counsel's argument did not focus on Cottrell's track record alone. In his written pretrial motion, defense counsel argued:

a. The alleged expert-witness does not have a doctorate or substantial equivalent degree;

b. He does not have a treatment history with the alleged victim;

c. He has not published in peer-reviewed publications that would have subjected him to a vigorous vetting process from colleagues in the field.

d. He never issued a report in this matter.

e. While he may have allegedly attended conferences, there is nothing to indicate that he has any sort of national standing as an expert witness.

At the motion hearing, defense counsel noted that Cottrell does not "provide anything for this [c]ourt." Defense counsel argued that there was no underlying scientific basis for Cottrell's testimony, only Cottrell's "own personal bias and opinion." This directly gets at all aspects of knowledge or skill required by MRE 702. Rather than inquire as to any of these factors, the trial court asked if Cottrell was causing problems in "4 out of 1,000 cases or 900 out of 1,000?" Defense counsel responded that he did not know the exact data but Cottrell was not educating the jury and was instead "biasing" and "vouching." The court, again rather than address any of the elements of MRE 702, observed that these sort of things "would just be terribly fun cross-examination."

The prosecutor focused their response on the fact that "behavioral testimony" from experts remained admissible in criminal sexual conduct cases. And, this Court has said as much in another case involving Cottrell—in *People v Gonzalez-Barcena*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2020 (Docket No. 348429), p 6, this Court said:

Behavioral science, and more particularly, the area of child sexual abuse, are both recognized fields of practice. See *People v Beckley*, 434 Mich 691, 718; 465 NW2d 391 (1990). The purpose of expert testimony such as Cottrell's is to aid the jury in determining whether a "the behavior of this particular victim is common to the class of reported child abuse victims." *Id*. at 726.

The prosecutor cited the *Gonzalez-Barcena*[1], *Beckley*, and cases that followed, and said experts can "talk about fabrication. You can talk about patterns of fabrication. They don't want you giving some sort of miracle measurement of how frequently it happens either by talking about percentages or talking about, well, children only lie in these very specific circumstances. And to me, that should be easy to control."[2] There was no evidence offered to support that Cottrell's testimony was based on sufficient facts or data or reliable principles and methods.[3]

As would come out at trial during voir dire, Cottrell's education specific to children is limited to an undergraduate degree in child psychology. His master's degree is in interpersonal social work. He published one article in his entire career, in 2007. He has never published a book. While he had historically been a member of organizations focused on child sexual abuse for "access to their journals," he was no longer a member at the time of trial. In the last four or five years, Cottrell has not seen *any* child patients and his role is primarily administrative. When asked if he was an expert in child sexual abuse and dynamics he responded that he "know[s] more than most people but not quite as much as some." He did not know whether child abuse protocols and research have changed over the last four years but "there is always added knowledge to the field." He said, without specifying how, that he "kept up with training." After offering these answers, Cottrell was qualified as an expert.

This record falls (far) short of meeting a "more likely than not" standard to demonstrate sufficient facts and reliable methods required under MRE 702. As this Court has said before, a *Daubert* hearing is not "a judicial search for the truth . . . . The inquiry is into whether the opinion is rationally derived from a sound foundation." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 7 32 NW2d 578 (2007). Neither the pre-trial hearing nor voir dire at trial provided a record that met that standard. In my view, the trial court abused its discretion in qualifying Cottrell as an expert. See generally *People v Bowden*, 344 Mich App 171, 191-192; 999 NW2d 80 (2022) (citation omitted) ("It is clear from the very evidence the prosecution presented . . . that the prosecution failed to meet its burden to establish the reliability, and thus the admissibility, of the proposed expert testimony. Therefore, the proposed expert testimony was inadmissible under MRE 702.").

Then, as the majority laid out, Cottrell's testimony amounted to error that was plain. I pause here to say I am struggling a bit with using the plain error standard. It is true that defense counsel did not object to the specific testimony highlighted in this appeal and the majority opinion.

---

[1] This unpublished case also concluded that a *Daubert* hearing for Cottrell was unnecessary. Of note is that that opinion was issued five years ago, addressing at trial that took place at a time when Cottrell was apparently, "working in the field of child sexual abuse" as well as "supervising the counseling of cases of child sexual abuse."

[2] I pause here to note that this is the exact testimony offered by Cottrell who was, as it would turn out, not easy to control.

[3] This is the same observation made by the Michigan Supreme Court about Cottrell's testimony in *Thorpe*: " . . . Cottrell did not base his opinion on the literature or any other scientific source. Cottrell based his opinion entirely on his experience working with people who were *self-reported* victims of sexual assault." *People v Thorpe*, 504 Mich 230, 254 n 32; 934 NW2d 693 (2019).

That seems to be what is required as the caselaw cited by the majority and the appellee lay out, e.g. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004) ("In order to preserve the issue of the improper admission of evidence for appeal, a party generally must object at the time of admission."). But, defense counsel objected to Cottrell testifying *at all* pretrial and renewed that objection at trial. And, defense counsel raised the very issue with Cottrell that came to fruition at trial, that Cottrell regularly flouts the rules. Nevertheless, because I believe that plain error is met in this case, I decline to engage with preservation further at this juncture.

Here, I only discuss whether Cottrell's testimony "seriously affected the fairness, integrity, or public reputation of the judicial proceedings" as the majority and I agree all other prongs of plain error are met. I agree with the majority that here, in addition to the complainant's testimony, there was facial bruising that supported her credibility. This evidence was addressed head on by defense counsel and was presented through his questioning, a facial bruise supports a physical assault but not a sexual one. And yes, this evidence interplays directly with complainant's credibility as whole as well, but Bonner also testified as to his own observation of and thoughts on the bruise on complainant's face. In the end, this remained, as it was for Thorpe and Harbison, "largely a credibility contest." *Thorpe*, 504 Mich at 264. When addressing the unpreserved error in the *Harbison* joined case, the Michigan Supreme Court did not conclude that Harbison was innocent or even that a different outcome at a new trial was likely. The Court emphasized that the error in that case "is far more pernicious than a mere evidentiary error. Rather, this error strikes at the heart of several important principles underlying our rules of evidence." *Id*. The Court concluded that "the gravity of this significant error seriously affected the integrity of Harbison's trial." *Id.* at 266. I cannot reach a different result here. This is Bonner's second time being tried. After the first trial, on direct appeal, this Court held that Cottrell's testimony was error and that its impact on trial was "a close question," observing that "[t]he prosecutor did not invite the answer Cottrell provided . . . ." *People v Bonner*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2020 (Docket No. 346460), p 5. At this point, given Cottrell's history acknowledged by the majority and the clear statement made in Bonner's initial appeal about Cottrell's testimony, this problematic testimony was foreseeable.

The prosecution did not need to corroborate the complainant's testimony for Bonner to be found guilty beyond a reasonable doubt. MCL 750.520h. But they opted, for a second time, to call upon an "expert" who is notoriously likely to bolster complainant credibility through inadmissible testimony. The trial court then repeatedly failed in its role as gatekeeper. I cannot separate "the gravity of this error" from the integrity of the proceedings. And these proceedings matter, not just to Bonner's constitutional rights and liberty but to the complainant and her family. What they have been put through during these proceedings is inexcusable, preventable, and shameful. I would find Cottrell's inadmissible expert testimony to amount to plain error and remand for a new trial.

/s/ Adrienne N. Young