# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HOLESH, Minors.

UNPUBLISHED
May 8, 2018

No. 340123
Otsego Circuit Court
Family Division
LC No. 06-000169-NA

*In re* NOVAK, Minors.

No. 340125
Otsego Circuit Court
Family Division
LC No. 06-000168-NA

*In re* X. RUIZ-GAMEZ, Minor.

No. 340126
Otsego Circuit Court
Family Division
LC No. 17-000001-NA

Before: SHAPIRO, P.J., and M. J. KELLY and O'Brien, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother appeals as of right the trial court's orders terminating her parental rights to her minor children, FH and DH (the Holesh children), KN, AN, and TN (the Novak children), and XR, pursuant to MCL 712A.19b(3)(g) and (j).[1] Because there are no errors warranting reversal, we affirm.

---

[1] The father of the Holesh children was participating in reunification services, and the father of the Novak children was awarded custody of his respective children. The father of XR voluntarily relinquished his parental rights. None of the fathers are a party to this appeal.

-1-

# I.  BASIC FACTS

In January 2017, petitioner, the Department of Health and Human Services (DHHS), filed a petition requesting that the trial court exercise jurisdiction over the children and terminate respondent's parental rights at the initial dispositional hearing.  The petition was filed after respondent's seven-year-old daughter, AN, was critically injured while riding on a snowmobile operated by respondent.  Respondent allowed AN to ride the snowmobile without a helmet, and the snowmobile collided with a motor vehicle.  At the time of the accident, respondent did not have a valid driver's license and she tested positive for THC.  Following the accident, respondent pleaded guilty to operating a vehicle while intoxicated causing serious injury.

Respondent had a prior history with Child Protective Services (CPS), including 47 investigations dating back to at least 2006, and she had received numerous services from petitioner over the preceding 10 years.  The children were previously removed from the home in 2006 due to domestic violence between respondent and the father of the Novak children.  At that time, respondent was already participating in services through Northern Family Intervention Services (NFIS) because of a previous referral.  Respondent made adequate progress with her 2006 case service plan and the children were returned to the home in 2007.

In 2012, respondent was living with FH and DH in Wayne County, where CPS substantiated allegations of improper supervision during AN's visit with respondent in Wayne County.  The father of the Holesh children obtained custody of his children, but returned them to respondent in 2013.  CPS substantiated allegations of physical abuse in Wayne County in 2014 when XR tested positive for THC at birth.  The Novak children were removed from the home in May 2015, after respondent left the home and relocated to Wayne County with FH, DH, and XR.  While AN and TN were placed in foster care, and KN was placed in a residential treatment facility due to significant behavioral issues, respondent agreed to participate in reunification services.  From May 2015 through November 2015, respondent visited KN just once at the treatment facility.  After the visit, KN suffered a severe behavioral outburst.  During the same timeframe, respondent had just one visit with AN and TN, and that visit was on the date of a scheduled June court hearing.  The Novak children were returned to their father's home in September 2015, and services in the home continued until December 2015.  A foster care worker who observed respondent when respondent was visiting the home in November and December 2015 testified that respondent did not participate in family team meetings designed to assist with KN's acclimation from the treatment facility back into the home and school, and respondent did not participate in family activities.  The worker testified that respondent often stayed in her room and that FH attended to the needs of XR.  The environment in the home was chaotic when respondent was present, with the children experiencing declines in school performance and their behavior.

When the children were removed from the home after the snowmobile accident, respondent was homeless.  The record reflects that she was living with FH, DH, and XR in the garage of the home where the Novak children lived with their father, who had custody of the Novak children pursuant to a 2013 domestic relations order.  Respondent's only confirmed source of income was SSI benefits and a small pension totaling less than $900 a month.  Nevertheless, she secured a one-bedroom apartment three weeks before the termination hearing.

At the termination hearing, caseworkers testified that respondent had a bond with the children, but the bond was more of an "attachment" and appeared to be more of a "peer" relationship.

## II. ADJUDICATION

## A. STANDARD OF REVIEW

Respondent argues on appeal that the trial court erred by accepting her plea of admission without advising her of her rights and the consequences of the plea as required by MCR 3.9171(B). Because respondent did not challenge the validity of her plea in the trial court, this issue is unpreserved. We review unpreserved issues for plain error affecting substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## B. ANALYSIS

A respondent in a child protection proceeding may admit allegations in a petition to terminate parental rights. MCR 3.971(A). Before accepting a plea, the trial court must advise the respondent on the record or in a writing that is made a part of the file of her rights listed in MCR 3.971(B). Specifically, the respondent must be advised of the following:

> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;
>
> (3) that, if the court accepts the plea, the respondent will give up the rights to
>
> (a) trial by a judge or trial by a jury,
>
> (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
>
> (c) have witnesses against the respondent appear and testify under oath at the trial,
>
> (d) cross-examine witnesses, and
>
> (e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;
>
> (4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent. [MCR 3.971(B).]

Failure to comply with these provisions may violate a respondent's due process rights. *In re Wangler*, 498 Mich 911 (2015).[2]

The trial court advised respondent on the record of her rights under MCR 3.971(B)(2) and (3)(a) through (e) and appointed a lawyer to represent her. When respondent's lawyer indicated that respondent wanted to admit to the allegation in paragraph 5 of the petition, as amended on the record, the allegation was read on the record as required by MCR 3.971(B)(1). Thus, respondent was advised of her rights under MCR 3.971(B)(1) through (3). However, petitioner does not dispute that the trial court violated MCR 3.971(B)(4) by failing to advise her of the consequences of her plea at the time of the plea. Thus, the trial court committed plain error by failing to advise respondent that her plea could be used in a later proceeding to terminate her parental rights. *In re Mitchell*, 485 Mich 922 (2009). However, to be entitled to relief on the basis of this unpreserved issue, respondent must also demonstrate that the error affected her substantial rights. *In re TK*, 306 Mich App at 703.

In support of her plea to the trial court's exercise of jurisdiction, respondent stated that she was driving the snowmobile without a driver's license, that AN was not wearing a helmet, and that the snowmobile was hit by a car, resulting in injuries to AN. These same facts were established by respondent's testimony at the termination hearing, as well as the testimony of the CPS worker. Therefore, the trial court was not required to rely on respondent's statements at the plea hearing. Additionally, respondent was aware at the time of her plea that petitioner was requesting termination of her parental rights in the original petition. Accordingly, on this record, the trial court's failure to advise respondent that her plea could be used against her at the termination hearing did not affect respondent's substantial rights and reversal is not warranted.

## III. REASONABLE REUNIFICATION EFFORTS

Respondent argues that petitioner was required, but failed, to make reasonable efforts to reunite her with the children. Generally, "petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005); MCL 712A.18f(1), (2), and (4). However, MCL 712A.19a(2) provides that "[r]easonable efforts to reunify the child and family must be made in all cases except" in certain circumstances. Further, when petitioner requests termination in the initial petition and termination of parental rights is petitioner's goal, petitioner is not required to provide reunification services. *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013); *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Accordingly, because termination was sought in the initial petition, petitioner was not required to provide reunification services.

Moreover, the reason termination of respondent's parental rights was requested in the initial petition was that respondent had been involved in previous cases over the preceding 10

---

[2] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

years. According to the caseworker, respondent had already been offered every service that petitioner could offer, and she had been offered referrals on nearly every service available. Additionally, even in the instant case, respondent was provided with a referral for a psychological evaluation to determine what services might be appropriate, but she never followed through and scheduled an appointment. Therefore, reversal is not warranted on this basis.

## IV. STATUTORY GROUNDS FOR TERMINATION

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred in finding that statutory grounds for termination were established by clear and convincing evidence. We review for clear error a trial court's factual findings and determinations regarding the statutory grounds for termination. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). In applying the clear-error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

### B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g) and (j), which permit termination under the following circumstances:

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err in finding that clear and convincing evidence supported termination of respondent's parental rights under subsections (3)(g) and (j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. The evidence showed that petitioner had previously made significant efforts with the family and that respondent failed to participate in and benefit from the services provided. Although testimony was presented that respondent made adequate progress on the parent-agency agreement after the children were removed from the home in 2006, respondent refused to participate in services that were recommended when the Novak children were removed from the home in 2015, shortly after respondent moved out and took the Holesh children and XR. Respondent had only one visit with the Novak children between May 2015 and November 2015.

The legally admissible evidence also supports the trial court's conclusion that the children would likely be harmed if returned to respondent's care. The present CPS case was opened after respondent allowed AN to ride a snowmobile without a helmet. Respondent drove the snowmobile despite that she did not have a valid driver's license and had THC in her system. AN suffered critical injuries as a result of the snowmobile's collision with a vehicle. While at the hospital after the accident, respondent behaved inappropriately and was more interested in obtaining medication for herself than she was about AN's injuries. Further, she continues to fail to acknowledge the effect that her behavior has on the children's well-being. She contends instead, that she has merely made "poor choices." Under these circumstances, we are not left with a definite and firm conviction that the trial court made a mistake when it found clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j).

Respondent argues that the trial court erroneously allowed hearsay evidence to be admitted at the termination hearing. However, because respondent did not object to the challenged evidence at the termination hearing, her evidentiary claims are unpreserved and review is limited to plain error affecting her substantial rights. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

When petitioner seeks termination of parental rights at the initial disposition, the court must find on the basis of clear and convincing, legally admissible evidence introduced at the dispositional hearing that one or more facts alleged in the petition (1) are true, and (2) establish grounds for termination of parental rights under MCL 712A.19b(3). MCR 3.977(E)(3). Hearsay is inadmissible except as provided by the rules of evidence. MRE 802. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a).

Respondent complains that the CPS worker's testimony that there were 47 DHHS investigation reports for respondent's children over the last 10 years was inadmissible hearsay because the worker did not have personal knowledge of each investigation. However, the CPS worker did not testify regarding any statements contained within the reports, and the record does not clearly establish that petitioner would not have been able to establish a foundation for the worker's testimony regarding the number of reports under the business records exception to the hearsay rule, MRE 803(6). Moreover, the trial court did not mention this evidence in its findings regarding the statutory grounds for termination. Therefore, respondent has also failed to establish that, even if the testimony was inadmissible, its admission affected her substantial rights.

Respondent next contends that testimony regarding the 2006 domestic violence incident between respondent and the father of the Novak children relied on inadmissible hearsay contained in law enforcement reports. Generally, police reports are inadmissible hearsay. MRE 801(c); *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011). In this case, however, the challenged testimony was not used to establish whether the acts occurred, that is, the testimony was not offered for its truth. Instead, it was offered for the

purpose of explaining why petitioner filed the 2006 petition. Therefore, the testimony was not hearsay. See, e.g., *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

Respondent further argues that the foster care worker's testimony that the NFIS worker who worked with the family before the 2006 case was opened "told him" that little to no progress had been made was inadmissible hearsay. Although this testimony qualifies as hearsay, respondent has made no attempt to explain how it affected her substantial rights. Even without information that respondent made little or no progress while participating in services with NFIS prior to 2006, there was ample evidence to support the trial court's finding that respondent has not "significantly benefitted from any service" or "significantly improved her parenting skills in the 10 plus years that DHHS has been involved in this case." Under these circumstances, the admission of the hearsay evidence did not substantially affect respondent's rights.

## V. BEST INTERESTS OF THE CHILDREN

### A. STANDARD OF REVIEW

Finally, respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. She maintains that the trial court failed to properly consider her bond with the children, the preferences of the two oldest children, and the placement of the Novak children with their father. She also maintains that the trial court failed to consider each child's best interests individually. We review the trial court's best-interests determination for clear error. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

### B. ANALYSIS

In determining a child's best interests, the trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42, 823 NW2d 144 (2012) (citations omitted). A court may also consider the likelihood that the child could be returned to the parents' home within the foreseeable future. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Moreover, a trial court must "explicitly address whether termination is appropriate in light of the children's placement with relatives." *In re Olive/Metts*, 297 Mich App at 43.

In its best-interest determination, the trial court separately considered the best interests of XR, the Novak children, and the Holesh children. Respondent relies on *In re Olive/Metts*, 297 Mich App 35, to argue that the court was required to separately address the best interests of each individual child. However, in *In re White*, 303 Mich App at 715-716, this Court clarified that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." In this case, the trial court did address the differences between each familial group of children. The Holesh children were the oldest group of children, were in foster care, and expressed their preferences in a letter to the trial court. The Novak children were the middle group of children and were in the custody of their father. XR was the youngest child whose father's parental rights had already been terminated. In its best-interest determination, the trial court properly considered each group's bond with respondent and the circumstances of the children in each group. Respondent

-7-

has not identified any significant basis for further distinguishing the individual children within the groups. And, as there is no indication that the interests of the children within each group significantly differed, the trial court did not clearly err by failing to distinguish the individual best interests of the children.

Next, although there is no dispute that respondent has a bond with the children, other considerations can outweigh the bond between a parent and a child. See *In re LE*, 278 Mich App 1, 29-30; 747 NW2d 883 (2008). XR was born in 2014 with THC in his system. At the time of the snowmobile accident in which AN was critically injured, respondent tested positive for THC. When the Novak children were in foster care under court supervision after respondent left the home in May 2015, respondent visited them just one time between May 2015 and November 2015, and she refused to participate in services. When respondent returned to the home in the fall of 2016, she did not participate in family activities or team meetings designed to assist KN in the transition from the treatment facility back into the home. Respondent allowed FH and the father of the Novak children to attend to XR's needs. Respondent's presence in the home created chaos that negatively impacted the children's school performance and undermined the structure and rules that the father of the Novak children was trying to implement. Her decision to ride a snowmobile while under the influence of THC, without checking to see if AN was wearing a helmet, demonstrated that respondent made decisions that placed her children at risk of harm. Even now, respondent minimizes her actions as "poor choices" and she blames her failure to act responsibly and in accordance with what petitioner expects of a parent on "situations in her life." Respondent's only identified source of income was SSI benefits and a small pension that together amounted to less than $900 a month. At the time of the termination hearing, respondent had only recently secured a one-bedroom apartment. Moreover, at the time of the continued termination hearing, respondent was serving a jail term expected to last until February 2018.

Finally, respondent asserts that the trial court failed to consider the Novak children's relative placement with their father as a factor that weighed against termination. The relative-placement factor is derived from MCL 712A.19a(8)(a), which addresses foster care provided by a relative. The term "relative" for purposes of this statute is defined as a "grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above [.]" MCL 712A.13a(1)(j). Because the Novak children's biological father is not a "relative" for purposes of MCL 712A.19a, the trial court was not required to weigh the children's placement with him against termination. *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016).

Therefore, under the circumstances present, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien