# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REGINA LOVIE-RONELL TILLMAN,

        Defendant-Appellant.

UNPUBLISHED
January 30, 2020

No. 346136
Kent Circuit Court
LC No. 18-000803-FH

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Regina Lovie-Ronell Tillman, appeals as of right her jury trial conviction of first-degree retail fraud, MCL 750.356c. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On December 22, 2017, Tillman purchased two items at a Walmart store: a box of macaroni and cheese and a Razor Dirt Rocket electric bike. The cashier noticed that Tillman was charged an unusually low price for the Razor Dirt Rocket bike and contacted Nabnajee Jones, an employee in the asset protection department to report that the bike was "under rung." Jones approached Tillman as she was leaving the store and checked her receipt. Although the Razor Dirt Rocket bike was usually priced around $249, the receipt indicated that Tillman had paid approximately $40 for it. After analyzing the Razor Dirt Rocket's box, Jones realized that the bike was not rung up as a Razor Dirt Rocket. Instead, it was rung up as a Razor RipStik Ripster[1] for approximately $40. Jones observed that the universal price code (UPC) on the bike's box had been completely covered by a new UPC. The new UPC was described as a thin cardboard cutout taped over the bike's original UPC with clear tape. The new—incorrect—UPC was observable on close inspection, but from a distance "it could be passed off as not obvious."

---

[1] Jones testified that the Razor Ripstik was similar to a skateboard.

-1-

Tillman was questioned regarding the price of the Razor Dirt Rocket by Jones and by a police officer. The officer explained that he advised Tillman of her constitutional rights and she agreed to give a statement. The officer stated that he asked her if she switched the price tag, and she stated that she did not. Yet, when asked about the price of the Razor Dirt Rocket, Tillman stated that she found it on a shelf that had a sale label for $39.99 above it. The officer and Jones went to the area where the Razor Dirt Rocket was displayed. Jones explained that the item was too big to be placed on a shelf. Further, Jones and the officer both testified that there were no tags indicating that the product—or another product in the vicinity—were on sale for approximately $40. The officer asked whether Tillman came to the store to specifically purchase the Razor Dirt Rocket, and Tillman explained that she had not. Instead, she claimed that her daughter had called while she was in the store and asked her to get the bike. Tillman's daughter, however, testified that she did not ask Tillman to pick up the bike.

The officer ran a criminal history check to see if Tillman had any prior retail frauds, and he determined that she did. When he confronted her with the history, Tillman admitted that she had a few priors. However, the officer stated that there was a discrepancy between the number of priors Tillman had and the number she admitted to committing. When asked about the discrepancy, Tillman stated that "it was not her" and that he had run the wrong person's criminal history. The officer testified that he had, however, confirmed her identification with her state issued identification and that she was also fingerprinted at the jail to confirm her identify. At one point, Tillman stated that she was "a kleptomaniac" and that she "was doing her best to try and not steal." Tillman was arrested and charged with first-degree retail fraud.

Before trial, the prosecution provided notice under MRE 404(b) that it was going to introduce two prior retail-fraud incidents from earlier in 2017 in order to prove Tillman's intent, knowledge, identity, absence of mistake or accident, and that she employed a common scheme, plan, or system when stealing items from retail stores. Tillman's lawyer did not object to the notice, nor did he object to the admission of the other-acts evidence at trial.

Amanda Stuart, an asset-protection detective working for Macy's, testified that on September 7, 2017, she observed Tillman grab two pairs of Levi boy's jeans off a shelf in Macy's. Tillman then entered the clearance department, peeled off clearance stickers from other items, and placed the stickers over the price tags on the boy's jeans. Stuart alerted the cashier, and Tillman was charged the correct price for the jeans. However, Tillman then grabbed another pair of jeans from the boy's department, shoved them into her bag, and left the store without paying for them. Stuart confronted Tillman outside the store, telling her that she had to pay for the jeans. Tillman, however, generally denied wrongdoing and drove away. Stuart testified that she recognized Tillman because she believed Tillman was caught shoplifting at Macy's in 2014.

Lindsay Fairchild, a loss-prevention supervisor at Kohl's, testified that on April 12, 2017, she witnessed Tillman place a shirt into an empty bag that she brought into the store and stick a pair of shoes into her purse. In addition, she saw Tillman rip a tag off a cheap Nike item and place it on a more expensive Nike item. Tillman also removed a UPC from a children's toy and placed it over a UPC on a more expensive toy's UPC. Fairchild noted that the UPC Tillman selected was an identical size to the UPC on the expensive toy and that Tillman had "perfectly" placed it over the original UPC. Tillman checked out without paying for all the items she selected and without paying the correct price for any of the items she selected. Fairchild noted

that the cashier had not caught the price switching, and she opined that it was difficult for a cashier to catch price-tag switching, especially on items of the same brand. She believed that a "very experience ticket switcher" would know to take the same brand for the price switch.

Following deliberations, the jury convicted Tillman as charged. This appeal follows.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Tillman argues that her lawyer provided constitutionally defective assistance by failing to object to the other-acts evidence, by failing to file a motion in limine to exclude Tillman's admission that she was a kleptomaniac, and by failing to object to prosecutorial misconduct during closing argument. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. In the proceedings before the trial court, Tillman moved for a new trial on the basis of her claim that her trial lawyer provided constitutionally deficient representation. The trial court, however, denied the motion and denied her request for an evidentiary hearing. Accordingly, because no evidentiary hearing was held, "our review is limited to mistakes apparent on the record." See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. ANALYSIS

In order to establish that he or she received ineffective assistance, a criminal defendant has the burden of showing that his or her defense lawyer's performance "was objectively deficient" and "that the deficiencies prejudiced" him or her. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). To meet the burden on the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). This Court will not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). To satisfy his or her burden on the second element, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

#### 1. OTHER-ACTS EVIDENCE

Generally, "evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). However, MRE 404(b) provides that other-acts evidence may "be admissible for [non-character] purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." To be admissible under MRE 404(b), generally other-acts evidence: (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502,

509; 674 NW2d 366 (2004). The trial court may also provide a limiting instruction to the jury regarding how it may permissibly use the evidence. *Id*. "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id*. (quotation marks and citation omitted). "Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *Id*. at 510. Thus, a proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994).

Here, the prosecution's notice indicated it intended to use the other-acts evidence to demonstrate the existence of a common plan or scheme and to show intent and lack of mistake. In accord with that stated purpose, during closing argument, the prosecutor argued that the other-acts evidence demonstrated Tillman's modus operandi and he highlighted the similarities between the other-acts evidence and the charged conduct, including that Tillman switched prices in all three incidents and that she specifically switched the prices of cheaper same-brand items for more expensive same-brand items so she could avoid detection. The other-acts evidence, therefore, was offered for a proper, non-character purpose.

In addition, the evidence was relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Although general similarities between the charged offense and the other-acts evidence are inadequate to establish a plan, scheme, or system used to commit the acts, evidence of misconduct similar to the charged misconduct "is logically relevant to show that the charged act occurred" if "the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007) (quotation marks and citation omitted).

Here, Tillman directs this Court to dissimilarities between the other-acts evidence and the charged offense. In doing so, however, she ignores the significant similarities between the incident. At Kohl's, Tillman used her teeth to remove a tag from a less expensive Nike product and placed it on a more expensive Nike product. She also removed the UPC for a cheap toy and placed it over an expensive toy's UPC. In this case, she switched the price of an expensive Razor item with that of a cheap Razor item by covering the UPC of the more expensive item with the UPC of the cheaper item. The incident at Macy's similarly involved Tillman switching prices, this time by peeling the stickers off clearance clothing and sticking them on two pairs of Levi jeans. Although the Macy's incident involved additional retail fraud perpetrated by concealing items in her purse and in a bag, that difference is not so great as to negate the inference that in all three incidents she employed a common scheme of switching the prices of an expensive product for that of a cheaper product before proceeding to check out. Given the similarity between the charged and uncharged conduct, we find the evidence was relevant to show the existence of a common plan or scheme.

In addition, the other-acts evidence was relevant to show intent and lack of mistake. At trial, Tillman's defense theory was that someone other than Tillman had taped a UPC from a different product over the UPC for the Razor Rocket Dirt bike. Tillman came to the store to pick

up a different item, was asked by her daughter to purchase the Razor Rocket Dirt bike, and unsuspectingly selected the box with the price-switched UPC. When she checked out, she assumed that because it was close to Christmas, the bike was on sale and did not find alarming that the product worth approximately $249 had rung up for approximately $40. She argued to the jury that because she had a history of retail fraud, she was being unfairly targeted in this case despite the fact that no one saw her do anything wrong. In his opening argument, Tillman's lawyer also asserted that when Tillman had committed retail fraud in the past she had admitted it, but that in this case she was contesting the charges because she had not done anything wrong. In sum, the defense was that although the price had been switched, Tillman had no intent to commit retail fraud and the charges against her was the product of a mistake. Given her argument, we agree that the other-acts evidence was relevant to show that when she went to the cash register with a $249 product with the UPC for a $40 product taped over its UPC, Tillman intended to defraud the store and had not simply made a mistake.

The probative value of the evidence—especially in light of the defense argument—was great. There was no video evidence showing Tillman switching the price of the item in this case, nor did any individual observe her taping the UPC for a cheap product over the UPC for an expensive product. Tillman was not seen to be in possession of box-cutters capable of cutting the UPC from one box, nor was she found with any tape of the type used to affix the new UPC over the UPC on the bike's box. Given the lack of direct evidence of price switching, we find that the other-acts evidence was probative because it permitted the jury to infer that Tillman had not accidently stumbled upon a randomly price-switched item and then innocently purchased it. Instead, in accord with the same scheme she had already employed two times in 2017, the jury could infer that she had switched the prices of the items. Given the limited purpose of the evidence—to show intent, lack of mistake, and the existence of a common plan or scheme—and given that the jury was provided with a cautionary instruction on the use of the other-acts evidence, we conclude that although the evidence was prejudicial, it was not unfairly prejudicial. The other-acts evidence was, therefore, properly admitted. And, because the evidence was properly admitted, Tillman's lawyer was not ineffective for failing to object to it. See *Ericksen*, 288 Mich App at 201.

Next, Tillman argues that her lawyer was also ineffective for failing to object to the following exchange:

> *Q*. Okay. All right. And how did the manager recognize the defendant?

> *A*. Back in 2014 [Tillman and her daughter] I believe were caught shoplifting as Macys.

Tillman contends that this evidence was unfairly prejudicial given that it introduced another incident of retail fraud to the jury, but without any details whatsoever to even support a finding that it was proper other-acts evidence. Nothing in the question posed, however, suggested that the answer would include testimony regarding another incident of retail fraud. Therefore, Tillman's lawyer was not ineffective for failing to object to the question. In addition, we do not find that Tillman's lawyer's performance was deficient for failing to request the testimony be stricken from the record. Tillman had admitted to the police officer that she had a history of retail fraud, and the defense theory was that Tillman's history of retail fraud was the reason she

was being prosecuted in this case despite the lack of direct evidence showing that she engaged in price switching. Given the defense theory and the cumulative nature of the evidence, we conclude that not objecting to the evidence was a strategic decision, and, even if improperly admitted, it is not reasonably probable that this brief statement regarding a possible 2014 retail fraud affected the outcome of the trial.

Tillman also argued that by failing to object to the other-acts evidence, her lawyer opened the door for the prosecutor to elicit testimony that her whole family was either thieves or lookouts who were colluding with a "thieving grandmother." One witness testified that Tillman's daughter was present and knew what was occurring while her mother was stealing from Kohl's. That same witness testified that Tillman was the only one who was "[c]oncealing items [and] price switching in the presence of her daughter and granddaughter." Tillman does not explain what objection her lawyer should have raised to the above evidence, nor does she explain how the admission of the testimony unfairly prejudiced her. We conclude that the fact that the jury could have used this testimony to form an unflattering opinion regarding Tillman's family does not also mean that without the testimony the outcome of the trial would have been different. Accordingly, assuming arguendo, that Tillman's lawyer was ineffective for failing to object to this testimony, Tillman cannot met her burden of showing that but for her lawyer's deficient performance the outcome of the trial would have been different.

Finally, Tillman argues that she was denied her right to the effective assistance of a lawyer because her lawyer failed to object to Fairchild's labeling Tillman an "experienced price switcher." However, Fairchild described for the jury the actions Tillman took when she price switched items at Kohl's, which, as stated earlier, was proper other-acts evidence. See MRE 404(b). Fairchild then answered questions from the prosecution about the difference between concealing and price switching and the techniques that experienced price switchers use to steal items from stores, which was permissible lay witness testimony. See MRE 701. Because the testimony was proper, Tillman cannot establish that her lawyer was ineffective for failing to object to it.

## 2. EXCLUSION OF TILLMAN'S ADMISSION

Tillman next argues that her lawyer was ineffective because he failed to file a motion in limine to exclude her statement to a police officer that she was a "kleptomaniac." Although she contends that her lawyer should have objected to this statement, on appeal she explains that "[i]t was entirely foreseeable that the prosecution would attempt to introduce this statement into evidence against Defendant—after all, it was her own statement and thus admissible under the rules of evidence." Given that Tillman appears to concede that the statement was properly admitted, we conclude that she has failed to meet the burden of showing her lawyer was ineffective for failing to attempt to exclude an otherwise admissible statement. *Ericksen*, 288 Mich App at 201.

Yet, to the extent that Tillman may be arguing that the statement should have been excluded under MRE 404(b), we disagree. Our Supreme Court has noted that a prior statement, itself, is not a "prior act." *People v Goddard*, 429 Mich 505, 518, 523; 418 NW2d 881 (1988); see also *People v Milton*, 186 Mich App 574, 576; 465 NW2d 371 (1990) ("a statement of general intent is not a prior act for the purposes of MRE 404(b). Rather, as a statement of a

party-opponent, admissibility is determined by the statement's relevancy and by whether its probative value is outweighed by its possible prejudicial effect."). Because Tillman's statement that she was a "kleptomaniac" is a statement regarding her mental health, not about any specific prior act, we conclude that her statement was not inadmissible under MRE 404(b).

Further, to the extent that Tillman may be arguing that her statement should have been excluded under MRE 403, we also disagree. In context, Tillman stated that she was a "kleptomaniac" in response to questioning by a police officer regarding her actions in this case. A jury could infer from her statement that she was aware that what she was doing was theft, but that she was unable to control her impulse (and so should not be held accountable) because she was a kleptomaniac. As a result, the statement was probative as to her consciousness of guilt with regard to the charged crime. The danger of unfair prejudice from Tillman's self-diagnosis of a mental-health condition was slight when compared to the probative value of Tillman's own words explaining her behavior in relation to the charged crime. Because the evidence was admissible as a party-opponent admission, MRE 801(d)(2), and because it was not inadmissible under MRE 403 or MRE 404(b), we conclude that Tillman's lawyer was not ineffective for failing to file a motion in limine to exclude it before trial.

## 3. PROSECUTORIAL MISCONDUCT

Tillman finally argues that her lawyer was ineffective for failing to object to the prosecutor's improper use of character evidence during closing argument. She also argues, independent of her claim of ineffective assistance, that her conviction should be reversed because of prosecutorial misconduct during closing argument. Because both arguments rely on the same factual basis, we address them together.

When evaluating claims of prosecutorial misconduct, this Court analyzes "whether the defendant was denied a fair and impartial trial." *People v Watson*, 245 Mich App 572, 594; 629 NW2d 411 (2001). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and [this Court] must consider the prosecution's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A prosecutor's statement must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). In general, prosecutors have "great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW 2d 659 (1995) (quotation marks and citation omitted). They "are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id*. (quotation marks and citation omitted). But they are not free to mischaracterize evidence during their closing arguments. *Watson*, 245 Mich App at 588.

Here, the prosecutor argued during closing argument:

*The defendant also admitted to [the police officer], to being a kleptomaniac. Webster defines it as:*

> *"A persistent neurotic impulse to steal especially without economic motive."*

*That is important, because you might get on the fact that that she had money and she had credit cards. But don't get hung up on that, because that's not the importance of why somebody steals, somebody who suffers from this. Kleptomania. They get a rush, they are addicted to it. If they can get away with merchandise it's not because they can't afford it, it's because they—they like that rush. They like the feelings of gaming the system.*

We heard from Lindsay Fairchild. She testified that during this same year that this incident happened at Kohl's, she was our second 404b witness. That the defendant did the same thing there. She steals by switching prices. She talked about how concealing is more common than the price switching. I think all the loss prevention officers talked about that. That is important, because common sense is going to be huge in this case. Don't forget that this price switching is a very—it is a unique form of stealing. Not everybody who steals, price switches, it takes experience. The defendant in that case, also argued about the price switching. But it was on sale, sound familiar? She did that in our case too. *Lindsay Fairchild described the defendant as an experienced price switcher. Experienced price switcher, that's new to me, explain it Ms. Fairchild. Well, she switches items of the same brand so that she doesn't get caught by these cashiers.* Which is what happened there, because their cashier didn't check it—didn't—didn't catch it. Does that sound familiar? The Nike Nike switch in that case, the Razor Razor switch in this case. She also said perfect price switching over the bar code. Perfect. I almost scanned right over that, but I'm like perfect what do you mean perfect? Oh, it is—it was exactly right over the barcode. That sounds familiar too, because Najee Jones talked about that as well. It was right over it, same size and everything. And I already talked about the cashier didn't even catch it. She is good at what she does. [Emphasis added.]

Tillman argues that in both italicized statements, the prosecutor made improper character arguments. We disagree.

The prosecutor stated that Tillman admitted she was a kleptomaniac. That comment is supported by the properly admitted evidence, i.e., Tillman's statement to the police officer that she was a kleptomaniac who was trying to not steal. The balance of the argument relating to Tillman's kleptomania is not an attack on Tillman's character. Rather, it is a common-sense explanation regarding the general characteristics of kleptomania that was offered to explain to the jury the importance of Tillman's statement. Because the prosecutor was merely arguing the properly admitted evidence, we discern no prosecutorial misconduct based on the first italicized statement. See *Bahoda*, 448 Mich at 282.

The second italicized statement is also not improper. Fairchild testified that the method of price switching used by Tillman made it more difficult for cashiers to catch the price-switching scheme, and she testified that individuals who switch prices on items tend to be more experienced than "first-timers." Given Fairchild's testimony, the prosecutor's argument is based on a reasonable inference drawn from the evidence and it does not constitute an improper argument. See *id*.

Because the prosecutor did not make inappropriate comments during closing argument, any objection to the arguments would have been futile. Accordingly, Tillman cannot establish that her lawyer's performance was deficient based on his failure to object to the prosecutor's closing argument. *Ericksen*, 288 Mich App at 201.

## III. EVIDENTIARY HEARING

Finally, Tillman contends that the trial court abused its discretion when it denied defendant an evidentiary hearing. We review for an abuse of discretion the trial court's determination whether to hold an evidentiary hearing. *Unger*, 278 Mich App at 216-217. An evidentiary hearing is only necessary if defendant "set[s] forth any additional facts that would require development of a record to determine if" defendant was denied her right to effective assistance of counsel. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). See also *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). In this case, the trial court determined that an evidentiary hearing was not required to develop the record. On appeal, Tillman argues that the answers to the following questions could be found if the could held an evidentiary hearing:

> 1) did counsel even recognize that the prosecutor's arguments and comments were improper? 2) Why did counsel not object? 3) Did trial counsel review the police reports and prior testimony of the witnesses, so as to anticipate that Defendant's past actions might be brought up? 4) Why did counsel not file a motion in limine to exclude reference to Defendant's being a "kleptomaniac"?

Yet, the other-acts testimony was properly admitted under MRE 404(b), and the prosecutor's arguments regarding the other-acts evidence and regarding Tillman's admission that she was a kleptomaniac were not improper. Further, we cannot discern any basis upon which Tillman's lawyer may have successfully excluded Tillman's admission of being a kleptomaniac from being admitted at trial, and Tillman has stated on appeal that the statement was, in fact, admissible. As a result, there is no need to determine the answer to the first, second, and fourth questions. And, although Tillman suggests a need to ask her defense lawyer regarding his investigation of the case, the record reflects that he was, in fact, familiar with Tillman's criminal record and that he incorporated it into the defense. Thus, further factual development of the record in order to answer the above questions is unnecessary. The trial court did not abuse its discretion by failing to hold an evidentiary hearing.

Affirmed.

/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly