*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 19, 2020

v

No. 344869
Midland Circuit Court
LC No. 15-006108-FH

JASON PAUL LOWLER,

Defendant-Appellant.

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

A jury convicted defendant, Jason Paul Lowler, of second-degree criminal sexual conduct (CSC-II) (person under 13 years of age), MCL 750.520c(1)(a) and MCL 750.520c(2)(b); assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1); and accosting, enticing or soliciting a child for immoral purposes, MCL 750.145a. The trial court sentenced defendant to serve concurrent prison terms of 24 months to 15 years for CSC-II, 17 months to 10 years for assault with intent to commit sexual penetration, and 17 months to 4 years for accosting a child. Defendant appeals as of right, challenging the sufficiency of evidence presented during trial to prove intent to commit sexual penetration and the element of accosting, and the admission of other acts evidence. Defendant also challenges the trial court's denial of his motion for directed verdict. We affirm.

## I. FACTS

On January 28, 2015, the minor victim, 11 years old at the time, was at home with her mother (KM), younger sister, and defendant, the minor victim's uncle. At approximately 8:00 p.m., the minor victim and defendant laid next to each other on the loveseat in the living room while watching television. The minor victim's sister sat on the floor with toys behind the minor victim and defendant while KM finished showering and preparing for a trip to the local Speedway.

The minor victim testified that as she and defendant watched television, defendant tickled her. Defendant also attempted to unbutton the minor victim's jeans and place his hand down her pants. Although defendant's attempt failed, defendant scratched the minor victim on the stomach.

-1-

Subsequently, defendant reached underneath the minor victim's shirt and bra and placed one hand on her bare breasts for approximately 5 to 10 minutes.

KM testified that while retrieving her keys in the kitchen, she noticed defendant's hand placed underneath the minor victim's shirt. Upon witnessing this, KM dropped the keys, which according to the minor victim's testimony caused defendant to remove his hand from underneath the minor victim's shirt. KM testified that upon picking up the keys from the floor, she looked towards the loveseat again and noticed defendant's hand no longer underneath the minor victim's shirt.

Before leaving for Speedway, KM encouraged the minor victim to accompany her to the store. The minor victim declined. According to the minor victim's testimony, during KM's Speedway trip, defendant asked if the minor victim wanted to go to bed with him. The minor victim described the interaction with defendant:

*Q*. Okay. And what other contact did you have with the Defendant, after your mom left?

*A*. After my mom had left, he said he was going to bed. I, at the time, did not use my bedroom because I just didn't feel like – lonely in there and it was too far away from anyone and I got scared because I was just a little kid and I was kind of just letting him use it for the night and he was, like, okay I'm gonna go to bed, do you want to come with me, and I was, like, no. And he was, like, come on. I'm, like, no. I just kept telling him no and he was, like, okay, whatever. And then since we're family, he gave me a hug and kiss goodnight but when he went to kiss me, he tried to French kiss me and he did get his tongue in my mouth and I pushed him away and told him that's not okay. And about, I think, two, three minutes later my mom had gotten home, so…

Upon returning from Speedway, KM testified that she instructed the minor victim to take a shower. However, KM instead pushed the minor victim into her bedroom. At that moment, the minor victim informed KM that defendant put his hand up her shirt. KM then instructed defendant to leave the home. Before defendant left, KM overheard defendant tell the minor victim, "If this was all about what was on—what happened on the couch, I didn't do anything wrong." KM reported the incident to police after defendant left the house.

In addition, KM reported to police a discovery by the minor victim a few days before the January 28, 2015 incident. The minor victim testified to finding defendant's cell phone, which contained recordings of her as she undressed in the bathroom and videos of defendant setting up the cell phone camera. Upon this discovery, the minor victim deleted the videos of her undressing and defendant positioning the cell phone, and returned the cell phone to him.

Detective Ryan Duynslager interviewed defendant on February 13, 2015. During the interview, defendant admitted to lying next to the minor victim and tickling her. Defendant denied attempting to unbutton the minor victim's pants and putting his hand on her breasts. Defendant further admitted kissing the minor victim on the lips, but denied using his tongue. Defendant also admitted asking the minor victim if she wanted to stay in her bedroom that night.

Additionally, Detective Duynslager asked defendant about the cell phone recording allegations. Defendant admitted placing his cell phone in the bathroom, propped up by the light switch with the back of the cell phone facing outward. However, defendant claimed the cell phone was not recording and denied turning on its recording mode. Defendant stated to Detective Duynslager that he intentionally placed his cell phone in the bathroom so the minor victim would find it and return it to him.

After the prosecution completed its presentation of evidence, defendant moved for a directed verdict on all three counts. The trial court denied defendant's motion. Subsequently, a jury convicted defendant of CSC-II (person under 13 years of age); assault with intent to commit criminal sexual conduct involving sexual penetration; and accosting, enticing or soliciting a child for immoral purposes. Defendant now appeals to this Court.

## II. ANALYSIS

Defendant argues that insufficient evidence existed to prove he intended to commit criminal sexual conduct involving penetration. Similarly, defendant contends that the prosecution failed to present to the jury sufficient evidence of accosting necessary to establish the crime of accosting a child for immoral purposes. For these reasons, defendant concludes that the trial court erred when it denied his motion for directed verdict. Defendant also argues that the trial court committed plain error when it allowed the prosecution to admit other acts evidence.

## A. SUFFICIENCY OF THE EVIDENCE

When examining whether a conviction is supported by sufficient evidence, we review the evidence in the light most favorable to the prosecution and consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). The elements of a crime may be satisfactorily proven by circumstantial evidence and the reasonable inferences arising from that evidence. *Id*. The trier of fact determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). We therefore draw all reasonable inferences and make all credibility choices in support of the jury verdict in reviewing the sufficiency of the evidence. See *Oros*, 502 Mich at 239.

Also, MCR 6.419(A) provides that upon conclusion of the prosecution's proofs, a defendant may seek and obtain an "acquittal on any charged offense for which the evidence is insufficient to sustain a conviction." For this type of motion for a directed verdict, "the trial court must examine the evidence introduced at trial in the light most favorable to the prosecution." *People v Szalma*, 487 Mich 708, 721; 790 NW2d 662 (2010). This Court reviews the record de novo when the trial court denies a motion for a directed verdict. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). Specifically, this Court evaluates evidence "in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted).

1. INTENT TO COMMIT CRIMINAL SEXUAL CONDUCT INVOLVING PENETRATION

MCL 750.520g(1) sets forth the punishment for an assault with intent to commit criminal sexual conduct involving sexual penetration.[1]  The elements consist of (1) an assault and (2) intent to commit criminal sexual conduct involving sexual penetration.  *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004).  An assault is either (1) an attempt to commit a battery, or (2) an unlawful act which places another in reasonable apprehension of receiving an immediate battery.  *Id*. at 628.  A "battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person."  *Id*. (quotation marks and citation omitted).  Assault includes touching to which the complainant cannot legally consent.  *People v Starks*, 473 Mich 227, 235-236; 701 NW2d 136 (2005).

An actor's intent to commit criminal sexual penetration may be express or it may be inferred from the surrounding facts and circumstances.  See generally *People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999).  It is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."  *Oros*, 502 Mich at 239 (quotation marks and citation omitted).  This Court must consider all reasonable inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence.  *Id*.  Michigan law requires no corroboration of a victim's testimony in a prosecution under MCL 750.520g.  See MCL 750.520h.

Unlike *Starks*,[2] defendant expressed no intent to penetrate the minor victim through direct questions or statements.  However, the minor victim's testimony revealed a series of actions that when considered in total, portray defendant's implicit intent to penetrate the victim.  Similar to *Starks*, defendant's hand location in proximity to the minor victim's genital area, coupled with her testimony that his attempt to reach down and unbutton her jeans was thwarted, would cause a reasonable factfinder to infer this intent.

Moreover, the minor victim testified that defendant placed one hand on her bare breasts for 5 to 10 minutes.  The testimony of KM and DNA analysis corroborated the minor victim's

---

[1] Assault with intent to commit criminal sexual conduct involving sexual penetration shall be a felony punishable by imprisonment for not more than 10 years.  MCL 750.520g(1).  "Sexual penetration" includes "sexual intercourse…or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  MCL 750.520a(r).

[2] In *Starks*, our Supreme Court held that the defendant's proximity to the completed act established sufficient probable cause to believe the defendant intended to commit criminal sexual conduct involving penetration.  *Starks*, 473 Mich at 237.  The Court reasoned that sufficient evidence existed because the victim's testimony revealed the defendant asked the victim whether she would perform fellatio on him.  *Id*.  In addition, the Court noted that the defendant's co-worker observed the defendant bending over in front of the victim less than two feet away while he held his unbuttoned and unzipped pants.  *Id*.

testimony. [3] Specifically, KM observed such conduct when retrieving keys from the kitchen. Although defendant removed his hand upon the sound of dropped keys, according to the minor victim's testimony, he asked her to go to bed with him and attempted to kiss her with his tongue, each act committed while KM drove to a local Speedway.

Therefore, this case presents sufficient evidence that a rational factfinder could infer defendant's intent to commit criminal sexual conduct involving sexual penetration. Accordingly, the trial court committed no error on Count II when it denied defendant's motion for directed verdict.

## 2. ACCOSTING

MCL 750.145a provides:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

Our Supreme Court has held that a person can commit the crime of accosting a child for immoral purposes by either (1) accosting, enticing, or soliciting a child with the intent to induce or force that child to commit a proscribed act or (2) encouraging a child to commit a proscribed act. *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011). The Michigan Supreme Court has explained:

> [T]he Legislature's use of the term "encourages" indicated its intention that the mens rea element of the encourages prong be the intent to do the physical act of encouraging. The verb "encourages" contemplates intentional conduct by a

---

[3] Kelly Jo Wright, a Sexual Assault Nurse Examiner (SANE), collected DNA swabs from the minor victim on January 29, 2015. Wright swabbed the minor victim's right cheek, both of her breasts, and inside her mouth. Detective Ryan Duynslager collected DNA evidence in the form of cotton or buccal swabs from defendant's mouth pursuant to a search warrant executed upon his arrest. Andrea Young, a forensic scientist for the Michigan State Police, analyzed the DNA samples from the minor victim and defendant, and determined that defendant's DNA variations set, or haplotype, matched the partial haplotype identified in the swab from the minor victim's right breast. Further, Young testified that despite a mixture of at least two males, defendant's haplotype matched the majority of the DNA identified in the sample from the minor victim's left breast.

defendant. To "encourage" means "to inspire with courage, spirit, or confidence[,] . . . to stimulate by guidance, approval, . . . to promote; foster." Thus, the act of encouragement is the evil in itself, and an accused, by completing the act, is "presumed to intend the natural consequences of his [actions] . . . ." In essence, the encourages prong envisions a mens rea consistent with a general criminal intent. [*Id*. at 499-500 (citations omitted; second and third alterations in original).]

Where a defendant has "committed acts of accosting, enticing, or soliciting, the statute requires the prosecution to demonstrate a specific intent to induce or force the child to commit proscribed acts[.]" *Id*. at 500. However, where a defendant encourages a child to commit a proscribed act, the prosecutor must prove only general intent. *Id*. at 499-501. The Michigan Supreme Court indicated that the encouragement to commit an immoral act or an act of sexual intercourse, without the act ever occurring, satisfies the statute. *Id*. at 500 n 15.

In this case, although defendant uses no direct words to describe his intention, defendant's actions indicate a series of inducements unlawful under MCL 750.145a. First, defendant attempted to unbutton and reach down the minor victim's jeans. Second, defendant placed one hand on the minor victim's bare breasts for about 5 to 10 minutes. Third, defendant asked the minor victim to accompany him to bed during the time when KM drove to and from Speedway. The minor victim testified to repeatedly telling defendant no. Fourth, after asking the minor victim to go to bed with him, defendant attempted to kiss her with his tongue, to which she responded by pushing him away and expressing her disapproval. These facts depict an adult male encouraging an 11-year-old girl to commit an act of depravity or immoral behavior.

Furthermore, the judge and jury heard the minor victim's testimony about defendant's actions, as well as the testimony of KM and Detective Duynslager. Additionally, the judge and jury heard scientific evidence that corroborated KM's and the minor victim's testimony. Weighed together, the facts provide a reasonable basis for the trial court to deny defendant's motion for directed verdict, and for the jury to find him guilty of accosting a minor.

### B. ADMISSIBILITY OF OTHER ACTS EVIDENCE

To preserve improper-admission-of-evidence issues for appeal, "a party generally must object at the time of admission." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). In this case, defendant challenges admission of testimonial evidence relating to a video on defendant's cell phone that recorded the minor victim undressing in the bathroom. However, during trial, defendant neglected to object to such testimony by the minor victim and, therefore, failed to preserve this issue.

Unpreserved issues of improper admission of evidence are reviewed for plain error. *Id*. Requirements for reversal under the plain-error rule are "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. An error affects substantial rights when "the error affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden to demonstrate that an error occurred, that the error was clear or obvious, and that the error affected his or her substantial rights. *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or

-6-

seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

The trial court record includes no written notice reflecting the prosecution's intent to introduce evidence under MCL 768.27a.[4] Procedurally, however, if a prosecutor intends to offer evidence under MCL 768.27a(1), the prosecutor "shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered." The plain language of MCL 768.27a(1) does not expressly require formal written notice. Compare MRE 404(b)(2) ("The prosecution in a criminal case *shall provide written notice* at least 14 days in advance of trial . . . ." (emphasis added)). Rather, it requires disclosure. Here, because the prosecutor presented testimony regarding the other-acts evidence during defendant's preliminary examination, it was disclosed. For that reason, there was no error in admitting the other-acts evidence under MCL 768.27a.

Furthermore, defendant fails to satisfy his burden to prove how any purported error in the admission of the evidence affected the denial of his motion for directed verdict or the jury verdict. In fact, defendant makes no argument at all demonstrating prejudice. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In this case, even in the absence of the disputed evidence, the trial court record presents sufficient evidence for a judge to deny defendant's motion for directed verdict and for a jury to convict him.

Affirmed.


/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron

---

[4] MCL 768.27a(1) states:

Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.